UNITED STATES of America,
Appellee,

v.

Max SCHARFMAN, Defendant-Appellant.

No. 99, Docket 71–1470.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1971.

Decided Sept. 27, 1971.

Nancy Rosner, New York City (Rosner & Rosner, New York City, on the brief), for defendant-appellant.

Maurice M. McDermott, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for the S.D. New York and Peter F. Rient and Peter L. Truebner, Asst. U. S. Attys., of counsel), for appellee.

Before KAUFMAN, ANDERSON, and FEINBERG, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Max Scharfman appeals from his conviction, after a trial before Judge Edward C. McLean in the Southern District of New York, of unlawful possession of furs stolen from an interstate shipment in violation of 18 U.S.C. § 659.

Scharfman does not question the sufficiency of the evidence nor does he assert any other ground for the reversal of his conviction except that all of the physical evidence admitted at his trial was seized during an illegally conducted search. Two pre-trial motions to suppress the evidence were denied. The second motion was made after the decision in Spinelli v. United States, 393 U.

S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), but was denied by Judge Mansfield although he assumed the retroactivity of Spinelli's standards. We find no reason to reverse these determinations.

On November 13, 1967, a Railway Express Agency International (REA) truck loaded with several hundred fur garments and destined for out of state buyers was hijacked at gun point in New York City. Some months later an unnamed informant told FBI agents that furs from that shipment could be found at two stores, Rosalle Furs, Inc. in New Rochelle and a Freeport location housing Rosalle Furs, Inc. and H. Appel Furs of Freeport, Inc. The informant had previously helped agents secure four convictions and was himself an experienced furrier. His tip was corroborated by Herbert Perlman, an employee of one of the shippers whose furs were hijacked. He visited the Rosalle store in New Rochelle and observed a "natural ranch mink coat" which he positively identified as having been a part of the hijacked shipment. FBI agents also discovered that the two stores were owned by Scharfman and one Frank Moccardi. United States Commissioner Earle N. Bishopp issued warrants for the search of these two premises on the basis of affidavits by FBI Agents Kilcommons and Fusco reciting the above facts. The affidavits sought, and the warrants granted, permission to search for books and records used as instrumentalities of the crime as well as the garments.[1] The two premises were searched on March 20, 1968 by Special Agents of the FBI. Index cards and large quantities of furs were seized from each store; in addition, a binder of consignment memoranda was taken from the Freeport establishment.

We see little merit to appellant's argument that probable cause for

---

1. The Freeport warrant authorized a search for "fur coats, stoles, jackets and other finished fur products, books, records and other fruits and instrumentalities. * * *" The New Rochelle warrant authorized a search for "the property specified [furs] and for such books and records as are being used as means and instrumentalities of the above described crimes. * * *"

the search did not exist. The reliability of the informant was demonstrated by his knowledge of the underlying crime, his knowledge of the fur industry, and information which he supplied in the past and which also led to four convictions. These factors clearly meet the requirement laid down in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964), for valid warrants based on information from unidentified informants. Moreover, the trustworthiness of the information was independently substantiated and thus complies with the standard set forth in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584 (1969).

Scharfman argues that the warrants are defective for still another reason. He submits that the failure to particularize the items to be seized converted the search into a general one, and accordingly violated the fourth amendment.[2] We do not agree, although we recognize that the property must be identified sufficiently to prevent "a mere roving commission." United States v. Quantity of Extracts, Bottles, etc., 54 F.2d 643, 644 (S.D.Fla.1931). We are also mindful that in Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), involving a seizure of some 2000 pieces of literature relating to Communist Party operations, the Supreme Court held that the particularity requirement "is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for the seizure is the ideas which they contain." *Id.* at 485, 85 S.Ct. at 511. But, when first amendment rights are not involved, the specificity requirement is more flexible. Indeed, in *Stanford* the Court refused to decide that the description "case of whiskey" was too generalized. *Id.* at 486, 85 S.Ct. 506;

*see* Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1928). In Vitali v. United States, 383 F.2d 121, 122 (1st Cir. 1967), a search and seizure of stolen watchbands was sustained. The court said that "[w]here goods are of a common nature and not unique there is no obligation to show that the one sought (here a substantial quantity of watch bands) necessarily are the ones stolen, but only to show the circumstances indicating this to be likely."[3] *See also* United States v. Averell, 296 F.Supp. 1004 (S.D.N.Y.1969) (seizure of thousands of undescribed hijacked wigs held constitutional).

■ The futility of further particularization is clear in this case. If the REA manifest had contained descriptions of the hijacked garments and these had been made available to the FBI (this is not conceded by the government), the warrant conceivably could have contained a descriptive itemization. In such an instance, however, if the searching agents entered a specified location with thousands of garments on the premises but the warrant itemized only a few hundred which had been allegedly stolen, the task of identifying and seizing the specific garments would have required a legion of fur experts to perform the task in a reasonable period. As we said in another context concerning appropriate search warrant procedures, the Fourth Amendment requirements do not impose a burden on the executing officer "beyond his power to meet." United States v. Bozza, 365 F.2d 206, 225 (2d Cir. 1966).

■ Scharfman also attacks the seizure of the index cards and consignment memorandum book because the warrant failed to describe them adequately. He further argues that proba-

---

2. The fourth amendment provides:
   " * * * no Warrants shall issue * * * [unless] particularly describing the * * * things to be seized."

3. Although the specificity point was not explicitly raised in *Vitali*, it is inconceivable that by mixing legitimately obtained watchbands with the stolen merchandise so as to make them virtually indistinguishable, the defendant could invalidate the seizure because more specificity has become impossible. The allegedly stolen merchandise is "particularly describ[ed]," in such instances even when generic.

ble cause did not exist for the seizure. It is settled that magistrates can make use of their background of experience to determine whether probable cause exists. *See* Rosencranz v. United States, 356 F. 2d 310 (1st Cir. 1966). *See also* Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948) (probable cause to arrest); Irby v. United States, 314 F.2d 251 (D.C. Cir.), cert. denied, 374 U.S. 842, 83 S.Ct. 1900, 10 L.Ed.2d 1064 (1963) (probable cause to arrest). It was entirely reasonable, under the circumstances of this case, for the magistrate to conclude that books and records would be utilized as instrumentalities in connection with the crime of disposing of hundreds of fur garments through a facade of legitimacy. Here, entries were made for the stolen garments, but the attempt at concealment of their source backfired when an obviously predated entry was found. The records could also be valuable evidence where a so-called "legitimate" front would record his inventory but omit the stolen goods. Finally, a general search for books and records was not directed by the warrant. Only those books and records used as "means and instrumentalities of the crime" were or could have been seized pursuant to the warrant. This adequately particularized the items seized. "When circumstances make an exact description of instrumentalities, [sic] a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." James v. United States, 416 F.2d 467 (5th Cir. 1969), cert. denied, 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970).

■ Scharfman also argues that the memo book, containing entries written in his own hand, should have been suppressed because the fifth amendment would permit him to refuse to produce such evidence if he had possession. His analogy is inapposite. We held in United States v. Bennett, 409 F.2d 888, 896, cert. denied, sub nom. Jessup v. United States, 396 U.S. 852, 90 S.Ct. 376, 24 L. Ed.2d 256, reh. denied, sub nom. Haywood v. United States, 396 U.S. 949, 90 S.Ct. 376, 24 L.Ed.2d 256 (1969), that "the Fourth Amendment does not protect broadly against the seizure whose compulsory production would be forbidden by the Fifth."