**William NAMEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5662.**

Court of Appeals of Alaska.

June 17, 1983.

Margaret W. Berck, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and PEGUES, Superior Court Judge.*

OPINION

BRYNER, Chief Judge.

█ William Namen was indicted for theft by receiving, in violation of AS 11.46.-190, AS 11.46.100(4) and AS 11.46.130(a)(1). After unsuccessfully moving to suppress evidence and dismiss his indictment, Namen entered a plea of *nolo contendere,* reserving the right to appeal from the denial of his pretrial motions.[1]

On appeal, Namen contends that the superior court erred in refusing to suppress evidence seized during a search of his home. The search was conducted pursuant to a warrant that Namen contends was invalid. The facts relevant to Namen's claim may be stated briefly.

On February 6, 1980, Mrs. Marie Shoemaker reported to police that her apartment had been burglarized. She indicated that a handgun and approximately $40,000 worth of jewelry had been taken. Although distraught at the time, Mrs. Shoemaker was able to describe the missing jewelry, and police compiled a list of individual items. Investigator Eugene Parmeter of the Anchorage Police Department, who was assigned to investigate the burglary, considered the list of stolen property to be "not as good as I would like to have, but I can understand why because of the—the victim's hysterics. However, [it is] fairly sufficient."

Within a short time, investigation focused on George Maldonado as a possible suspect;

Maldonado gave a statement to the police implicating Rusty Chavez as the perpetrator of the burglary. Maldonado also disclosed that Chavez had sold the stolen jewelry to Namen at Namen's house, where Namen operated a gold reclaiming business. Maldonado indicated that he was present during the transaction between Chavez and Namen and that he recognized several pieces of jewelry because Mrs. Shoemaker had been his landlady and he had previously seen her wearing it. Maldonado described several pieces of jewelry to police, and the description matched items listed on the inventory prepared by police from their interview with Mrs. Shoemaker after the burglary.

One week after the burglary, on February 13, 1980, the state applied for a warrant to search Namen's residence for the stolen jewelry. The application was made by sworn testimony before a district court judge, rather than in affidavit form. Investigator Parmeter summarized the investigation and related the information given by Maldonado tying the stolen jewelry to Namen and Namen's residence. Although, in the course of his testimony, Parmeter referred to the inventory of stolen property compiled by the police, the inventory itself was never read or otherwise made a part of the record. Maldonado also took the stand and confirmed Parmeter's account of the details linking the Shoemaker jewelry to Namen. Specifically, Maldonado said that two days after the burglary he witnessed a sale of jewelry by Chavez to Namen at Namen's residence and recognized some of the jewelry as belonging to Mrs. Shoemaker. He further stated that, on February 11, he was at the Namen residence again and saw some of the same jewelry.

The state's application was granted, and a warrant was issued authorizing a search of Namen's home. The warrant was exe-

* Pegues, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The state stipulated with Namen that the issues raised in his pretrial motions were dis-

positive. We therefore have jurisdiction over Namen's appeal. *See Oveson v. Anchorage,* 574 P.2d 801 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974).

cuted that same day. Officers conducting the search apparently had access to the inventory of stolen property, and Mrs. Shoemaker herself was present during part of the search, to identify specific items of jewelry. During the search, some of the jewelry taken in the Shoemaker burglary was recovered. This evidence, coupled with Maldonado's testimony, led to the indictment of Chavez for burglary and Namen for theft by receiving.

Namen contends on appeal, as he did below, that the February 13 warrant authorizing search of his residence for stolen jewelry violated the constitutional requirement that a warrant must describe with particularity the property which it authorizes to be seized.

Although the state characterizes Namen's claim as raising the issue whether the warrant in this case was invalid because it did not specify *each* item of stolen jewelry, it is more accurate to view Namen's claim as raising the question whether it was necessary for the warrant to describe *any* physical attributes of the stolen jewelry. The February 13 warrant authorized seizure of "[j]ewelry stolen from 100 E. Fireweed Land [sic, Lane] # B on February 6, 1980." No further description of the Shoemaker jewelry was provided in the warrant. Upon consideration of the circumstances in this case, we conclude that this description is unduly broad and fails to comport with the constitutional requirement of particularity.

■ The fourth amendment to the United States Constitution requires that "no warrant shall issue, but upon probable cause, ... and *particularly describing* the place to be searched, and the persons or things to be seized." (Emphasis added.) Identical language is contained in article I, section 14 of the Alaska Constitution. The requirement that a search warrant describe with particularity property to be seized under its authority accomplishes a number of significant purposes. Specificity as to the objects at which a warrant is directed serves to protect against the possibility of a general, exploratory search, to assure that articles of property outside the legitimate scope of the warrant are not subject to mistaken seizure, and to reinforce the fundamental rule that seizure of property cannot be permitted in the absence of probable cause. *See generally* 2 W. LaFave, *Search and Seizure,* § 4.6(a), at 95–98 (2d ed. 1978). Moreover, the requirement of particularity gives the occupant of the premises being searched express notice of the scope of authority exercised by officers conducting the search. *See Commonwealth v. Taylor,* 383 Mass. 272, 418 N.E.2d 1226, 1229 (Mass. 1981).

The particularity clauses of the United States and Alaska Constitutions seek to further these policies by prohibiting the issuance of warrants that allow officers unbridled discretion to decide what property will be seized. In *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231, 237 (1927) (emphasis added), the United States Supreme Court held:

> The requirement that warrants shall particularly describe things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. *As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.*

It has frequently been observed that this passage from *Marron* cannot be given a literal interpretation, because officers executing a search warrant will, in virtually all cases, be required to exercise some discretion in deciding what property to seize, even when the warrant contains an elaborate description. Courts interpreting *Marron* have thus tended toward development of a flexible, practically based standard for determining the extent of particularity required in a given case. *See generally* 2 W. LaFave, *supra* § 4.6, at 96, 98–100; *see also United States v. Abrams,* 615 F.2d 541, 551 (1st Cir.1980) (Campbell, J., concurring).

■ The requisite degree of particularity must be determined by the totality of the circumstances in each case. *United States v. Townsend,* 394 F.Supp. 736, 747 (E.D.Mich.1975). Although the amount of specificity required may vary from one case

to another, at least a minimal standard of particularity will be required in all cases:

> The amount of particularity required in naming the items to be seized for a given warrant to be valid will vary with the circumstances and with the ability of the complainants to be specific. But a minimum amount of particularity is required in all cases.

*People v. Harmon,* 90 Ill.App.3d 753, 46 Ill.Dec. 27, 29, 413 N.E.2d 467, 469 (Ill.App. 1980) (citation omitted). As a rule, then, search warrants must describe the property to be seized in a manner that is reasonably specific under the circumstances of the given case, so that the policies underlying the particularity requirement may be best effectuated.

> The warrant must enable the searcher to reasonably ascertain the things which are authorized to be seized. Circumstances often make an exact description of the property impossible and in those cases the judicial officer issuing the warrant must weigh the practical necessities of law enforcement against the likelihood of a violation of the personal rights of the one whose premises and possessions are to be searched.

*United States v. Cook,* 657 F.2d 730, 733 (5th Cir.1981) (citations omitted).[2]

In keeping with the express constitutional requirement of particularity and its underlying purpose of assuring a description that will enable officers to determine with accuracy the property that they are authorized to take, warrants describing property only in generic terms—that is, in terms generally applicable to an entire type or class of property, rather than to a specific item—are disfavored in the absence of substantial justification:

> The use of a generic term or a general description in a warrant ... is acceptable to the judicial officer issuing the warrant only when a more specific description of the things to be seized is unavailable.

*United States v. Cook,* 657 F.2d at 733.[3] Use of generic descriptions in search warrants has been permitted in a number of areas where reasons for lack of specificity are apparent.[4] In cases involving contraband, such as drugs, generic descriptions have commonly been permitted because the contraband is, by its very nature, illegal and a detailed description will provide no meaningful guidance beyond that afforded by a generic one.[5] In cases where the inherent nature of the property sought by a warrant precludes specific description, generic description has also been allowed.[6] Similar results have been reached where attendant

---

**2.** A similar view was expressed in *People v. Prall,* 314 Ill. 518, 145 N.E. 610, 612 (Ill.1924), a case decided more than 50 years prior to *Cook:*

> A minute and detailed description of the property to be seized is not required, but the property must be so definitely described that the officer making the search will not seize the wrong property.... [The warrant must give the officer] information by which he could select certain property within the description in the warrant and refuse to take other property equally well described in the warrant.

*See also United States v. Abrams,* 615 F.2d at 544–45; *United States v. Gardner,* 537 F.2d 861, 862 (6th Cir.1976); *United States v. Townsend,* 394 F.Supp. at 745–47; *State v. Tidyman,* 30 Or.App. 537, 568 P.2d 666, 670 (Or.App. 1977).

**3.** *See also James v. United States,* 416 F.2d 467, 473 (5th Cir.1969), *cert. denied,* 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970):

> When circumstances make an exact description of instrumentalities a virtual impossibili-

ty, the searching officer can only be expected to describe the generic class of items he is seeking.

*Accord United States v. Townsend,* 394 F.Supp. at 746–47; *United States v. Tranquillo,* 330 F.Supp. 871, 873–74 (M.D.Fla.1971).

**4.** *See generally United States v. Abrams,* 615 F.2d at 545–47; *Lockridge v. Superior Court,* 275 Cal.App.2d 612, 80 Cal.Rptr. 223, 230–33 (Cal.App.1969).

**5.** 2 W. LaFave, *supra* § 4.6(b), at 101.

**6.** *See, e.g., Mann v. State,* 389 N.E.2d 352, 356 (Ind.App.1979) (warrant authorizing a search for "piglets of approximately six to eight (6–8) weeks in age, being a crossbreed of Yorkshire, Hampshire, and Duroc" upheld as sufficiently particular since "6–8 week old piglets are not normally the subjects of detailed morphological identification"); *State v. Salsman,* 112 N.H. 138, 290 A.2d 618 (N.H.1972) (warrant for 42 sheets of plywood upheld when greater detail was impossible).

circumstances prevented a detailed description from being given.[7] In cases involving stolen goods, yet another exception has been carved out when detailed description has been difficult and the evidence established that the stolen goods sought are likely to be a part of a larger collection of similar contraband located at the premises to be searched.[8]

In the present case, we must assess the adequacy of the description of property contained in the search warrant for Namen's residence by considering the amount of detail actually provided in the warrant, the amount of additional detail that could reasonably have been provided under the circumstances, and the extent to which such additional detail would have served to give guidance to officers executing the warrant as to the items of property to be seized.

In this regard, the state initially asserts that the description contained in the search warrant, which permitted seizure of "[j]ewelry stolen from 100 E. Fireweed Land [sic, Lane], # B on February 6, 1980," is sufficiently particular because it specifies only the jewelry stolen in the Shoemaker burglary and does not apply to other property. This assertion does not stand up to scrutiny.

In describing the jewelry to be seized as having been stolen from the Shoemaker residence on February 6, the warrant revealed nothing about the physical appearance or condition of that property and could, in and of itself, provide no guidance to officers conducting the search as to what specific pieces of jewelry at Namen's residence were included or excluded from the scope of the warrant. Unlike contraband such as narcotics, there is nothing about the nature or physical character of stolen property that renders it inherently identifiable as being stolen. *Gonzales v. State,* 577 S.W.2d 226, 229 (Tex.Cr.App.), *cert. denied,* 444 U.S. 853, 100 S.Ct. 109, 62 L.Ed.2d 71 (1979); 2 W. LaFave, *supra* § 4.6(c), at 102. Thus, characterization of property as having been stolen at a given time or from a given place will not normally suffice to satisfy the requirement of particularity, since such characterization does not enhance an officer's ability to distinguish between property unlawfully held that is subject to seizure and property of the same general class that is lawfully held and not subject to seizure. 2 W. LaFave, *supra* § 4.6(c), at 102; *see, e.g., State v. Sweatt,* 427 A.2d 940, 949–50 (Me.1981).[9]

---

**7.** *See, e.g., State v. Withers,* 8 Wash.App. 123, 504 P.2d 1151, 1154–55 (Wash.App.1972) (extensive fire damage to a vessel rendered description of the contents of its holds impossible); *cf. People v. Superior Court of Marin County,* 25 Cal.3d 67, 157 Cal.Rptr. 716, 720, 598 P.2d 877, 881 (Cal.1979) (validity of a warrant describing only a limited number of stolen articles evaluated in light of the fact that the victim was unable to remember all property that had been stolen).

**8.** *See, e.g., United States v. Cortellesso,* 601 F.2d 28 (1st Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980) (warrant generically describing items of stolen clothing, such as jackets and suits, upheld when labels had been removed from the clothing, making detailed description difficult, and the affidavit established that the goods were part of a large collection of similar stolen property); *People v. Raicevich,* 61 Ill.App.3d 143, 18 Ill.Dec. 630, 377 N.E.2d 1266 (Ill.App.), *cert. denied,* 441 U.S. 963, 99 S.Ct. 2409, 60 L.Ed.2d 1067 (1979) (warrant authorizing seizure of a particularly described handgun and "any other handguns which may be stolen" upheld where the gun described in detail was one of many that had been stolen together, and where the officer who identified the stolen gun had seen many other guns with it, but was unable to inspect them). *See also United States v. Scharfman,* 448 F.2d 1352 (2d Cir.1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972) (warrant that was deliberately overbroad in failing to particularly describe stolen furs was upheld when stolen furs constituted a small percentage of similar furs in the defendant's store and seizure of all goods, with subsequent identification of stolen items, was deemed a less intrusive alternative). *But see Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 325, 99 S.Ct. 2319, 2323, 60 L.Ed.2d 920, 928 (1979) (condemning overly broad seizures of property under a general warrant contemplating post-seizure identification of specific items sought).

**9.** *See also United States v. Townsend,* 394 F.Supp. at 745–47; *United States v. Pinero,* 329 F.Supp. 992, 996 (S.D.N.Y.1971); *People v. Harmon,* 46 Ill.Dec. 29–30, 413 N.E.2d at 469–70.

■ Since, in the present case, the warrant's description of the Shoemakers' jewelry disclosed nothing distinctive about its physical condition or appearance and provided no guidance to officers executing the warrant, this description cannot be deemed particular in any meaningful sense. Here, the warrant, on its face, effectively constituted a blanket authorization for seizure of jewelry from Namen's residence, giving the officers executing the warrant complete discretion to decide what jewelry to seize.

We do not think that the generic reference to jewelry in the warrant constitutes a description that is reasonably specific in light of the circumstances disclosed by the record. Here, a description of the stolen jewelry was neither impossible nor impractical. Indeed, an itemized list detailing the property stolen in the Shoemaker burglary had been prepared and was available when the warrant was applied for and issued. While this list of property was apparently not as good as it might have been due to the emotional state of Mrs. Shoemaker when she made her report, the list was nonetheless described as "fairly sufficient" by the investigating officer who sought the warrant. Moreover, to the extent that Mrs. Shoemaker's emotional condition immediately after the burglary did not permit compilation of an adequate list, it must be noted that the search warrant in this case was applied for one week after commission of the burglary, and there is nothing in the record to indicate that police would have had difficulty obtaining a more accurate and detailed inventory of stolen property by conducting an additional interview with Mrs. Shoemaker.

The omission from the warrant of a reasonably detailed description of the jewelry to be seized cannot be accounted for by maintaining that the nature of the property, or other attendant circumstances, precluded a reasonable degree of specificity. The jewelry was capable of being described with greater particularity, since an inventory had in fact been compiled, which provided a general description of most of the stolen jewelry and was sufficiently detailed to enable Investigator Parmeter to match Maldonado's description of jewelry that he had observed at Namen's residence with at least two specific items listed as being stolen. Under the circumstances, we believe it is clear that the description of the stolen property contained in the inventory would have been adequate to satisfy the particularity requirement. Jewelry is commonly found in homes. There is nothing in the record to indicate that all of the jewelry located at Namen's residence was expected to be connected to the Shoemaker burglary [10] or that jewelry from the Shoemaker burglary was likely to be only a part of a larger cache of similar goods stolen from other sources. Given the availability of a useful inventory and the lack of circumstances excusing the need for a particular description, use of a generic description effectively permitting seizure of all jewelry found at Namen's residence cannot be justified.[11]

We therefore conclude that the search warrant for Namen's residence did not, on its face, satisfy the constitutional requirement that property to be seized pursuant to a warrant be particularly described. This conclusion, however, does not end our inquiry, for the state advances two additional arguments in an attempt to circumvent the apparent facial invalidity of the warrant.

10. In fact, because testimony in support of the warrant indicated that Namen operated a gold reclaiming business at his residence, it would have been reasonable to infer that the likelihood of finding jewelry other than items stolen from the Shoemaker residence was especially high.

11. See, e.g., United States v. Cortellesso, 601 F.2d 28 (1st Cir.1979), cert. denied, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); United States v. Scharfman, 448 F.2d 1352 (2d Cir.1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); cf. United States v. Abrams, 615 F.2d at 544 (rejecting a claim by the government that general language in a warrant authorizing seizure from a physician's office of books and records relating to a complex scheme of medicare and medicaid fraud should be read as a specific authorization to seize all records on the premises searched).

First, the state contends that when the totality of the testimony in support of the warrant is considered, it becomes evident that a detailed inventory describing the stolen jewelry was in fact in the possession of the police and that use of the inventory during execution of the warrant could logically have been contemplated by the issuing judge. Second, in a related argument, the state maintains that, since the inventory of property was apparently available to officers executing the warrant, and since Mrs. Shoemaker herself was present at the scene of the search to identify jewelry actually stolen, any deficiency in the warrant was cured. We reject both of these arguments.

In assessing the merits of the position advanced by the state, it is important to bear in mind that one of the primary evils against which the drafters of the fourth amendment sought to protect was the general warrant—a warrant authorizing the unrestricted search of persons or premises. The United States and Alaska Constitutions reflect this concern by requiring expressly that search warrants particularly describe the property to be seized. A search warrant is thus not only a document authorizing a search; it is also the instrument by which the permissible bounds of a search are formally limited. And without a reasonably particularized description of articles to be seized a warrant will provide little or no protection against a generalized search. Accordingly, a warrant which, on its face, fails to meet the requirement of particularity is invalid and of no effect. To permit extrinsic documents to be incorporated informally into the body of a warrant by implication, or to allow rehabilitation of a general warrant by reference to subsequent police conduct would be to ignore the clear constitutional mandate. *See Commonwealth v. Taylor,* 418 N.E.2d at 1229.

While caution and self-restraint on the part of officers executing a search warrant that is unreasonably vague in its description of property to be seized is commendable, such measures cannot rehabilitate the warrant's failure to describe property with the necessary amount of particularity. *United*

*States v. Abrams,* 615 F.2d at 544–45; *Application of Lafayette Academy, Inc.,* 610 F.2d 1, 5 (1st Cir.1979); *United States v. Marti,* 421 F.2d 1263, 1268–69 (2d Cir.1970), *cert. denied,* 404 U.S. 947, 92 S.Ct. 287, 30 L.Ed.2d 264 (1971). As succinctly stated by a leading commentator:

> [A] warrant with an insufficient description may not be rehabilitated by showing that the executing officer was aware of other facts which enabled him to know exactly what things were intended to be covered, or that the officer for that reason or by luck only seized the items which an adequate description would have covered.

2 W. LaFave, *supra* § 4.6(a), at 101 (footnote omitted).

This is not to say that the text of a supporting affidavit or an itemized inventory of property cannot properly be incorporated by reference in a warrant. It has frequently been held that a general description on the face of the warrant may be cured by incorporation of materials that describe with specificity the property to be seized. *United States v. Brock,* 667 F.2d 1311, 1323 (9th Cir.1982); *United States v. Cook,* 657 F.2d at 735–36; *In the Matter of Seizure of Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1318 (9th Cir.1981); *United States v. Tranquillo,* 330 F.2d at 873; *Lockridge v. Superior Court,* 80 Cal.Rptr. at 232–33. However, incorporation of an extrinsic document must be formally reflected in the warrant; the warrant must, on its face, refer to the extrinsic document that it purports to incorporate, and the intent to incorporate the document must be stated. In addition, a copy of the document incorporated normally must be attached to the warrant, or, at the very least, the warrant must direct that the extrinsic document accompany it at the time of execution. *See Application of Lafayette Academy, Inc.,* 610 F.2d at 4; *Commonwealth v. Taylor,* 418 N.E.2d at 1229–30. *See generally* 2 W. LaFave, *supra* § 4.6, at 100–01.

In the present case, considering the fact that the inventory of stolen jewelry

could readily have been incorporated by reference, the almost total lack of particularity in the warrant authorizing the search of Namen's residence must be held to contravene the express terms of both the Alaska and United States Constitutions.[12] The deficiency cannot properly be regarded as a mere technicality. *See Commonwealth v. Taylor,* 418 N.E.2d at 1232. Under circumstances similar to those of the present case, courts have uniformly concluded that evidence is inadmissible when obtained as a result of a search conducted in reliance upon a warrant failing to describe with adequate particularity the property to be seized. *See, e.g., United States v. Cook,* 657 F.2d at 733–34; *United States v. Abrams,* 615 F.2d at 543–45; *United States v. Gardner,* 537 F.2d 861, 862 (6th Cir.1976); *United States v. Townsend,* 394 F.Supp. at 745–47; *Lockridge v. Superior Court,* 80 Cal. Rptr. at 232–33; *State v. Sweatt,* 427 A.2d at 948–50; *Commonwealth v. Taylor,* 418 N.E.2d at 1228–32; *People v. Harmon,* 46 Ill.Dec. at 29–30, 413 N.E.2d at 469–70. We find these authorities to be persuasive, and we are compelled to reach a similar conclusion in this case. We therefore hold that the evidence seized as a result of the warrant authorizing the search of Namen's residence for stolen jewelry must be suppressed.[13]

We emphasize, however, that our holding is based on the specific facts of the case

12. We do not imply that a description so precise as to allow identification of each item of stolen jewelry would have been realistic in this case or that such a description was required. Indeed, as we have stated, the inventory of stolen jewelry given to the police by the victim would have been sufficient to meet the standard of particularity. Especially in cases involving ordinary jewelry and other items that are not unique, it will rarely be possible to include in the warrant a written description that is sufficiently detailed to enable officers to distinguish a stolen item from among several items that are similar in their general characteristics. We emphasize that such precision and detail are not necessary to satisfy the constitutional requirement of particularity.

Even a relatively broad description can provide significant guidance to officers executing a warrant. For example, officers will not be likely to seize rubies or emeralds by mistake if the warrant specifies "stolen diamonds" rather than "stolen gems." Similarly, a warrant describing the property to be seized as "women's rings" will protect against mistaken seizure of men's rings. Thus, at a minimum, general characteristics of stolen property should be described in a warrant, when they are known. Furthermore, as indicated by the facts of the present case, when numerous items of jewelry are stolen, it may be possible to describe one or more unique pieces with sufficient detail to permit identification. In such cases, a detailed description of the unique items may be included in the warrant, with a generic reference to items that cannot be precisely described. *See, e.g., Davis v. State,* 499 P.2d 1025 (Alaska 1972), *rev'd on other grounds,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In short, the requirement of particularity is one which must be applied with common sense; in the context of stolen goods such as jewelry, where facts are available that could reasonably provide guidance and limit the permissible scope of the search, some description of the stolen goods must be included in the warrant. *Compare United States v. Honore,* 450 F.2d 31 (9th Cir. 1971), *cert. denied,* 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740 (1972) *with State v. Kealoha,* 62 Hawaii 166, 613 P.2d 645 (Hawaii 1980).

13. Our disposition makes it unnecessary to consider Namen's challenge to the constitutionality of Alaska's theft by receiving statute, AS 11.46.190.

We likewise need not consider the possible theory that the seizure of the stolen jewelry found at Namen's residence might be justified by the plain view exeption to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). The search warrant in this case was issued not only for the jewelry, but also for cocaine. No cocaine was found in the course of the search, although some apparent drug paraphernalia were seized. In the course of the suppression hearings conducted below, the state never argued that seizure of the stolen jewelry could be justified on the alternative theory that the jewelry was in plain view of officers conducting a lawful search for cocaine. To the contrary, when Namen's counsel attempted to establish lack of probable cause to support issuance of a search warrant for cocaine in order to preclude any finding that the seizure of jewelry might be justified on an alternative plain view theory, the state successfully objected, contending, *inter alia,* that the issue of probable cause to search for cocaine was irrelevant. On appeal, as below, the state has avoided reference to the possible alternative of plain view. Under these circumstances, we must deem the state to have abandoned reliance on a plain view theory as an alternative justification, and we refrain from expressing any view concerning applicability of the plain view doctrine in this case.

before us and that the requirement of particularity must not be rigidly construed to require unreasonable or unnecessary detail in the description of property to be seized. Where the nature of the property or the facts involved in a specific case preclude detailed description, unrealistic standards cannot properly be applied; the amount of particularity that is required must be determined with practicality and common sense.[14] In this case, there was simply nothing to prevent inclusion in the warrant of a reasonably specific description of property to be seized.

The judgment entered by the superior court is REVERSED.

---

14. We further emphasize that the particularity requirement is sufficiently flexible so that it can be met in more than one way. As we have pointed out, incorporation of inventories by reference is one alternative. Where stolen articles or other property cannot be described with precision in writing but can be identified by a victim, by a police officer familiar with the facts of the case, or by an expert, another alternative would be to include express provisions in the warrant requiring the person who is capable of identifying the property to be present at the time of the search.