OPINION OF THE COURT
Martin Marcus, J.
In each of these cases, the defendant has moved for the suppression of physical evidence, claiming that property that the People intend to offer at trial was seized from his premises in *265 an illegal search. The People contend that the property was obtained in the execution of a search warrant which was facially valid, issued upon a showing of probable cause, and properly executed. The defendant seeks to controvert the warrant on various grounds, only one of which need be considered: the failure of the warrant to specify the property the police were authorized to search for and seize.
The search warrant directed the "Police Department”[1] to conduct a search of the defendant’s premises in a rooming house in Bronx County. The applicant for the warrant was Detective Douglas Lange of the New York City Police Department.[2] In his application, Detective Lange asserted that there was reasonable cause to believe that a gold 20-inch chain, a yellow metal crucifix, three watches and a yellow metal bracelet, which had been stolen from the home of their owner, were unlawfully possessed by the defendant, and would be found in the defendant’s room.[3] Although Detective Lange explicitly stated in the application that this was the property "sought to be seized”,[4] the warrant itself did not expressly limit its authority to the seizure of that property, and in no other way described or specified what property the police could search for and seize.[5]
*266 The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”[6] The "'core’” purpose of this provision is "[t]o protect the right of privacy from arbitrary police intrusion”. (People v Nieves, 36 NY2d 396, 401 [1975], quoting Wolf v Colorado, 338 US 25, 27 [1949].) The requirement that a search warrant specify the property to be seized was included in the Fourth Amendment in order to prohibit general warrants. (See, e.g., Lo-Ji Sales v New York, 442 US 319, 325 [1979].) By requiring a particular description of the property to be seized, the Fourth Amendment " 'makes general searches * * * impossible and prevents the seizure of one thing under a warrant describing another.’ ” (Berger v New York, 388 US 41, 58 [1967], quoting Marron v United States, 275 US 192, 196 [1927].)
For these purposes, a warrant should be sufficiently specific to leave "nothing * * * to the discretion of the searcher in executing the warrant” (People v Nieves, 36 NY2d, supra, at 401 [citation omitted].) Thus, while search warrants must be evaluated with common sense, and not in a hypertechnical manner (People v Robinson, 68 NY2d 541, 551-552 [1986]), "the descriptions in the warrant and its supporting affidavits [must] be sufficiently definite to enable the searcher to identify the persons, places or things that the Magistrate has previously determined should be searched or seized.” (People v Nieves, 36 NY2d, supra, at 401.)
*267 Whether a search warrant is sufficiently particular "necessarily depends upon the facts and circumstances of each case.” (People v Nieves, 36 NY2d, supra, at 402.) " '[A] description of the property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit.’ ” (People v Hulsen, 178 AD2d 189, 190 [1st Dept 1991], quoting United States v Wuagneux, 683 F2d 1343, 1349 [11th Cir 1982].) Thus, a general description of property is constitutionally acceptable when more specificity is not possible, either because of the nature of the property (see, e.g., United States v Scharfman, 448 F2d 1352, 1353, n 1 [2d Cir 1971] [" 'fur coats, stoles, jackets and other finished fur products, books, records and * * * instrumentalities’ ”]) or because a more specific description of it was not available to the applicant. (See, e.g., United States v Cook, 657 F2d 730 [5th Cir 1981].)[7]
Here, however, the defendant claims the warrant is invalid not because the warrant’s description of the property to be seized was inadequate, but because the warrant failed to describe in any way the property it authorized to be seized. While it is true that minor omissions and inconsistencies should have no effect upon an otherwise valid warrant (see, People v Nieves, 36 NY2d, supra, at 401), the People’s characterization of the omission in this case as merely "ministerial” and "clerical” trivializes the constitutional ramifications of the error. This warrant may be saved only if, as the People argue, it may be read to incorporate as a limitation the specification in Detective Lange’s application of that property he said he "sought” authority to seize.
In support of their incorporation claim, the People note that Detective Lange was not only the applicant for the warrant, but also one of the officers who executed it. They allege also that the application for the search warrant was never sealed, and that Detective Lange brought it with him to the rooming house where the warrant was executed and showed it to the rooming house manager. Furthermore, Detective Lange *268 himself swears that "[i]t was my understanding that my affidavit, in which I specified the property sought to be seized, was incorporated into the search warrant”.
While it appears that New York’s courts have not previously considered whether to permit the type of incorporation for which the People here argue, many of the Federal circuit courts, including the Second Circuit, as well as a number of the courts of other States, have held that a description contained in the application for a search warrant may, by incorporation into the warrant, cure what would otherwise be a defect in the warrant’s description of the property to be seized. However, these same courts have generally required that at the time and place of the search, the application be attached to the warrant, or at least physically accompany it, and that the warrant explicitly incorporate the affidavit by reference.[8]
These two requirements are not merely formal; both are grounded in practical considerations. "The affidavit must be attached to the warrant so that the executing officer and the person whose premises are to be searched both have the information contained in the affidavit, in addition to what is said on the face of the warrant.” (United States v Haydel, 649 F2d 1152, 1157, supra.) The application must be explicitly incorporated in the warrant so that the executing officers are directed to the application for guidance concerning the scope of the search. (United States v George, 975 F2d 72, 76, supra.)
In this case, although the People do not allege that the application was attached to the warrant, they do state that it was present at the time of the search, and was shown to the owner of the premises. The application was not, however, explicitly incorporated in the warrant.[9] Accordingly, the People must *269 rely upon cases in which the rule requiring such explicit incorporation has not been rigidly applied.
In one such case, United States v Bianco (998 F2d 1112, 1115 [2d Cir 1993]), a search warrant authorized the search of a home for purposes of seizing, "[N]otes, Ledgers, Envelopes, Papers, and Records Containing Initials, Names, Addresses, Dollar Amounts, Codes, Figures, and the Like: United States Currency.” The warrant did not limit the property to be seized in any other way, not even by specifying the crime to which that property related. Although the court found that this description was overly broad, it held that the deficiency was cured by the application, which "spell[ed] out quite clearly the nature and purpose of the proposed search.” (Supra, at 1117.) Despite the fact that the warrant was neither attached to nor explicitly incorporated in the affidavit, the court held that "the functional purposes of those two requirements — to insure that all parties involved are informed of the scope of and limits upon the authorized search — were fully satisfied” (supra, at 1116-1117), because "the presence and activity of agent Hutton, who had read the affidavit and who approved each seizure, satisfies us that the limitations included in the affidavit were observed.” (Supra, at 1117.)
Similarly, in United States v Wuagneux (683 F2d 1343, supra), a search warrant authorized the seizure of records of "the receipt and disbursement of kickback funds” (supra, at 1350, n 5), a description which the court found to be ambiguous "inasmuch as further facts are required to enable an officer to identify records of payments the Strike Force had probable cause to believe were improper kickbacks.” (Supra, at 1350.) These "further facts,” however, were contained in the application for the warrant. The court allowed the affidavit to cure the ambiguity in the warrant, even though the affidavit was neither expressly incorporated in the warrant nor attached to it, because "the searchers were adequately informed of the limitations on the search given their instruction by [the agent who applied for the warrant], their opportunity to read the affidavit, and its presence at the search site”, and because, "under the peculiar facts of [that] case”, the purpose of inform *270 ing the person whose premises were to be searched of the scope of the search was also "adequately served”. (Supra, at 1351, n 6.)[10]
Bianco (supra) and Wuagneux (supra) represent, at best, the outer limit of the flexibility of these rules. Indeed, they appear to conflict with other cases which mandate a more exacting adherence to the requirement that the affidavit curing an ambiguity in a warrant be explicitly incorporated in it. In United States v George (975 F2d 72, supra), for example, which was decided only one year earlier and in the same circuit as Bianco (supra), but to which Bianco makes no reference, the warrant was executed in the presence of the officer whose affidavit had formed the basis for the application. Nonetheless, the court held that "[a] sufficiently specific affidavit will not itself cure an overbroad warrant”, and that "[r]esort to an affidavit to remedy a warrant’s lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it.” (United States v George, 975 F2d, supra, at 76.) Indeed, the court even rejected the argument that because the warrant recited that "it [was] 'issued upon the basis of an application and affidavit[ ] of Patrolman Brickell”, it implicitly incorporated the affidavit, since it did "not direct the executing officers to refer to the affidavit for guidance concerning the scope of the search and hence does not amount to incorporation by reference.” (Supra.)
*271 Whether or not cases like Bianco (supra) and Wuagneux (supra) are prevailing law does not affect the outcome of this case. While those cases permitted reference to unincorporated affidavits to cure ambiguities in a warrant’s description of property to be seized, the problem here is not ambiguity in a description, but the total absence of a description. In Bianco, the warrant at least informed the agents that they were authorized to seize notes, ledgers, envelopes, papers and records, and resort to the affidavit was necessary only to tell them which of those sorts of property the warrant was meant to include. Similarly, in Wuagneux, the warrant told the agents they could seize records relating to the receipt and disbursement of kickback funds, and the affidavit was necessary only to explain what those kickback funds were.
In contrast, the warrant in this case said absolutely nothing about what property could be seized. It did not include a generic reference to a particular type of property, and it had no descriptive term whose meaning or limitation could be divined by reference to the application. Moreover, here, as in United States v George (975 F2d, supra, at 76), "[n]othing on the face of the warrant [told] the searching officers for what crime the search [was] being undertaken.” Thus, the warrant gave the executing officers no guidance in, and the owner of the premises no notice of, what property could be seized. Moreover, even though the application was present at the scene, and even though it was shown to the owner of the premises searched, there was no provision, description or term in the warrant which the affidavit could clarify for either the officers or the owner.
Detective Lange now avows that when the warrant was issued, he understood it to incorporate his affidavit, including the affidavit’s specification of the property he sought authority to seize. Of course, what authority he intended to obtain from the warrant is a separate question from what the warrant actually authorized.[11] Even though he expressed that intent in his application, his subjective belief that the application was *272 incorporated in the warrant is not to the slightest extent objectively reflected in the warrant’s provisions.[12] Finally, his assumption that it was somehow silently incorporated in the warrant provides no basis to uphold the execution of the search warrant, even if that assumption was made in good faith.[13] Whatever the applicant’s belief, the warrant in this case, like that in George (supra) gave the executing officers " 'virtually unfettered discretion to seize anything they [saw]’ ” (United States v George, 975 F2d, supra, at 75, quoting United States v Mankani, 738 F2d 538, 546 [2d Cir 1984]), and was thus unconstitutionally broad.
For these reasons, the defendant’s motion to controvert the warrant and to suppress all of the evidence seized in its execution is hereby granted.

. The warrant did not specify that the particular police department authorized to execute its provisions was the New York City Police Department, but this omission is insufficient to invalidate the warrant. (See, People v Davis, 93 AD2d 970 [3d Dept 1983] [because the investigation was conducted by the Binghamton Police Department and one of its members was applicant for the warrant, failure of search warrant explicitly to authorize that department to execute warrant was clerical and did not invalidate the warrant or its subsequent execution]; see also, People v Barfield, 151 Misc 2d 1031 [Suffolk County Ct 1991].)

. In the typed portion of his affidavit, Detective Lange’s last name is misspelled as "Lang”. However, when Detective Lange signed the affidavit, he (not surprisingly) spelled his name correctly.

. In support of that assertion, Detective Lange alleged that latent fingerprints had been found on a window frame at the burglarized premises, that those fingerprints had been determined to be the defendant’s, and that the defendant had admitted "in sum and substance that he was willing to return the stolen items, and that he would allow the police into his home”. The People do not now assert, however, that the police entered and searched the defendant’s room with his consent.

. Specifically, Detective Lange stated in the application that he sought authority to seize "(a) stolen property, and property unlawfully possessed, consisting of: 1 — gold 20 inch chain; 1 — yellow metal crucifix, 3 — watches; 1 — yellow metal bracelet”.

. In relevant part, the warrant, which according to its caption was issued upon "The Application Of The Police Department”, provided that,
*266 "You are hereby authorized and directed to search the following premises located at:
"2443 Morris Avenue, Apartment /Room #7, in the county of Bronx, STATE OF NEW YORK.
"This search warrant must be executed between 6 a.m. and 9 p.m.
"This court hereby specially determines that adequate grounds exist for authorizing the executing police officer(s) to enter the premises to be searched without giving notice of authority and purpose, and the court so authorizes.
"This search warrant must be executed not more than ten days after the date of issuance.
"The search warrant and any property seized must be returned and delivered without any unnecessary delay.”
The only other provision in the warrant is that referred to in footnote 9 (infra).

. Article I, § 12 of the New York State Constitution contains identical language. Consistent with these Federal and State constitutional provisions, CPL 690.45 (4) also requires that when a search warrant authorizes the seizure of property, the warrant must include "[a] description of the property which is the subject of the search”.

. On the other hand, courts have observed that " '[failure to employ the specificity available will invalidate a general description in a warrant.’ ” (United States v Blakeney, 942 F2d 1001, 1027 [6th Cir 1991], quoting United States v Cook, 657 F2d 730, 733, supra.) Thus, in Blakeney, the court found a search warrant to be overbroad because it permitted the seizure of property described genetically as "jewelry” even though the applicant for the warrant had available a more specific inventory of the stolen jewelry for which the warrant was issued. (See also, Namen v State, 665 P2d 557, 563 [Alaska Ct App 1983] [warrant for stolen jewelry overbroad since jewelry may commonly be found in private homes].)

. See, e.g., United States v Roche, 614 F2d 6, 8 (1st Cir 1980); United States v George, 975 F2d 72, 76 (2d Cir 1992); United States v Washington, 852 F2d 803, 805 (4th Cir 1988); United States v Haydel, 649 F2d 1152, 1157 (5th Cir 1981); United States v Blakeney, 942 F2d 1001, 1024, supra; United States v Strand, 761 F2d 449, 453 (8th Cir 1985); United States v Towne, 997 F2d 537 (9th Cir 1993); United States v Harris, 903 F2d 770, 775 (10th Cir 1990); United States v Weinstein, 762 F2d 1522, 1531 (11th Cir), mod 778 F2d 673 (1985); United States v Maxwell, 920 F2d 1028, 1031 (DC Cir 1990). More cases are collected in United States v Curry (911 F2d 72, 77 [8th Cir 1990]). See also, State v Riley, 121 Wash 2d 22, 27-28, 846 P2d 1365, 1369 (1993); People v Macavoy, 162 Cal App 3d 746, 755-758, 209 Cal Rptr 34, 40-41 (Cal Ct App 1984).

. The only language of incorporation contained in the warrant was the statement, "Copies of the warrant of arrest of the kind specified in Criminal *269 Procedure Law § 690.05 (2) (b) and the underlying accusatory instrument are attached to and made a part of this search warrant.” This statement was apparently included in the warrant in error as the warrant concerned a search for property and not a person. In any case, the defendant was already in custody when the search warrant was issued, and no arrest warrant had been issued for him or for anyone else who might be found in his premises.

. On occasion, courts have also shown remarkable "flexibility” in determining whether in fact an application was attached to a warrant. In United States v Haydel (649 F2d 1152, 1157, supra), for example, the court held that a warrant’s description of the premises to be searched was inadequate without resort to the underlying affidavit. The court took note of the rule that reference to the application was permissible for this purpose only if the application was attached to the warrant, and acknowledged that "there [was] nothing in the testimony to .show that it was actually attached to the warrant that was executed”. (Supra.) Nonetheless, the court "considered] the affidavit *. * * for several reasons. First, the affidavit appears in the record with the warrant each time the warrant itself appears * * * [Testimony concerning how the search was made demonstrates that the officers knew that they were looking for the Haydel residence. Presumably, had Haydel asked to see the warrant to ascertain the officers’ authority, he would have been shown the warrant and the affidavit together. Because the burden of proof in a motion to suppress [was] on the petitioner * * * we certainly should not assume the contrary. Therefore, we may consider the information contained in the affidavit to elucidate the warrant.” (Supra [footnote and citation omitted].) In United States v Curry (911 F2d 72, 77, n 4, supra) the Eighth Circuit took note of the fact that "[s]ome circuits have applied these criteria in a less exacting fashion,” but declined itself to modify "this circuit’s well-established rule that the affidavit must both accompany the warrant and be incorporated into it.”

. In the People’s memorandum, they point to cases in which a search warrant contained a discrepancy, error or omission in the address of the place to be searched, and the warrant was upheld by relying upon the personal knowledge the executing officer had of the targeted premises. "However, where the inadequacy arises not in the warrant’s description of the place to be searched but rather in the things to be seized, the officer’s personal knowledge of the crime may not cure the defect * * * This is so because the purpose of a warrant is not only to limit the executing officer’s discretion, but to inform the person subject to the search what items the of *272 fleer may seize.” (State v Riley, supra, 121 Wash 2d 22, 29, 846 P2d 1365, 1369, citing United States v Hayes, 794 F2d 1348, 1355 [9th Cir 1986].)

. The warrant itself makes no reference to the application beyond that in the caption indicating that the warrant was being issued "in the matter of the application of the police department”. Although the issuing Magistrate did state on the record at the time she issued the warrant that she was doing so "[u]pon the sworn affidavit of the officer”, the Federal courts have repeatedly held that such language, even if set forth in a warrant, is insufficient to incorporate the affidavit by reference. (United States v George, 975 F2d 72, 76, supra; United States v Russell, 960 F2d 421, 424, supra; United States v Maxwell, 920 F2d 1028, 1032, supra; United States v Strand, 761 F2d 449, 453-454, supra.)

. At least in this State, any good-faith belief Detective Lange may have had that the specification in his application had somehow been incorporated in the warrant is no defense to the warrant’s failure to do so expressly. (Compare, United States v Maxwell, 920 F2d 1028, supra [although warrant incorporated overly broad description of items to be seized, search pursuant to warrant upheld because agents who executed warrant had good-faith belief it was valid], with People v Bigelow, 66 NY2d 417 [1985] [declining to apply good-faith standard to execution of search warrant].)