Luther RACKLEY, Plaintiff(s),

v.

CITY OF NEW YORK, et al., Defendant(s).

No. 99 CIV. 5813(JES).

United States District Court, S.D. New York.

Feb. 26, 2002.

Vandenberg & Feliu, LLP, Attorneys for Plaintiff, New York, Michael S. Gruen, Esq., Jane E. Calvin, Esq., Of Counsel.

Isaacs & Evans, LLP, Attorneys for Defendant Airday, New York, Patti E. Evans, Esq., Of Counsel.

Michael D. Hess, Corporation Counsel of the City of New York, Attorney for City Defendants, New York, Sherrill Kurland, Esq., Assistant Corporation Counsel, Michelle Goldberg–Cahn, Esq., Assistant Corporation Counsel, Of Counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Luther Rackley ("plaintiff" or "Mr. Rackley") brings the above-captioned action against the City of New York ("the City") and individual City employees (collectively, "the City Defendants"), and New York City Marshal George Airday ("defendant Airday").[1] Plaintiff alleges that he is entitled to relief because the procedures the City uses to enter judgments for unpaid parking tickets and subsequently to seize street-parked cars pursuant to such judgments ("the Seizure Process" or "the Process")—as implemented by both the New York City Parking Violations Bureau ("the PVB") and defendant Airday—infringes on plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution. The City Defendants and defendant Airday each move for summary judgment pursuant to Fed. R. Civ. Pr. 56.[2] Plaintiff also cross-moves for summary judgment. For the reasons set forth below, the Court grants defendants' motions and denies plaintiff's motion.

---

1. The City, the City defendants, and defendant Airday will be collectively referred to as "defendants."

2. Defendant Airday joins the City Defendants' arguments urging the dismissal of plaintiff's constitutional claims. But Defendant Airday also contends that additional, unrelated legal principles mandate the dismissal of all claims against him. *See* Memorandum of Law of Defendant New York City Marshal George Airday dated May 21, 2001. However, for the reasons described in detail below, the Court will not address the merits of such issues because resolution of plaintiff's federal constitutional causes of action moots all claims against defendant Airday.

## I. BACKGROUND

The evidence before the Court on the instant motions demonstrates, at a minimum, that during the time period relevant to the instant action Mr. Rackley violated New York City's parking rules and regulations on multiple occasions. Mr. Rackley, also, it seems, did not always timely pay the fines that resulted from such violations.[3] As a result, the City issued warnings of default judgments and, ultimately, multiple default judgments against Mr. Rackley for his alleged failure to pay the fines and penalties to which the City claimed entitlement. Finally, defendants twice seized plaintiff's car—on July 21, 1998 and October 21, 1998—to satisfy the judgments they claim he then owed. *See* Affirmation of Michael S. Gruen dated April 30, 2001 ("Gruen Affirmation I.") at ¶¶ 48–78. The instant dispute addresses the propriety of defendants' actions in both

issuing the above-described default judgments and then seizing plaintiff's car.

Not surprisingly, plaintiff takes issue with defendants' actions. In particular, he complains that his car was not "tow eligible" on the occasions the City seized it. Plaintiff contends that, at the time of each seizure, the proper judgment amount attributable to his vehicle was below the $230 "tow eligible" threshold required for defendant Airday to seize plaintiff's car.[4] Plaintiff says this threshold was not met because defendants committed errors during the Seizure Process.[5] By plaintiff's account, these alleged errors both resulted from and are evidence of the constitutional infirmities of the Seizure Process—a process which plaintiff also argues is in violation of several provisions of New York State law. Plaintiff's federal claim, made pursuant to 42 U.S.C. § 1983, is that the Seizure Process violates both his Fourth

---

**3.** The Court is aware, of course, that Mr. Rackley disputes various facts regarding the payment, non-payment, and validity of certain parking tickets and default judgments issued against him. He does not, however, dispute that he failed to timely pay a number of his tickets. Indeed, plaintiff tellingly does not dispute defendants statement that "[t]he seizure of Plaintiff's vehicle on July 21, 1998 was the ninth occasion since 1987 that a vehicle owned by Plaintiff had been seized to enforce unsatisfied New York City parking violation judgment debt." Declaration of Alan S. Roth dated February 14, 2001 ("Roth Declaration I.") at ¶ 68.

**4.** On this point, plaintiff says he was below the $230 limit for outstanding judgments because of both prior payments and reductions in fines he obtained through administrative proceedings. *See, e.g.*, Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment dated April 30, 2001 ("Plaintiff's Memo. I.") at 2.

With respect to the fine reduction issue, the Court granted plaintiff leave to amend his complaint during the pendency of the parties initial motion submissions but before the June

11, 2001 oral argument. *See* Third Amended Complaint dated April 10, 2001 ("Complaint"). Accordingly, the Court granted the parties leave to—and the parties in fact did—address the factual and legal issues posed by such amended complaint in post-argument briefing that was ultimately completed on November 7, 2001. As the Court indicated at the aforementioned oral argument, and as discussed more fully below, the instant Memorandum Opinion and Order addresses both the issues raised by these post-argument briefs and those raised in the initial motion papers.

**5.** These alleged errors include, according to plaintiff (and as alluded to *supra* at note 4): (1) the failure to credit him for timely payment of certain of the parking tickets; (2) the City Defendants' wrongful actions to deprive him of fine reductions obtained through administrative proceedings; (3) the failure to dismiss technically defective parking tickets; and (4) the failure to apply a portion of the payment plaintiff made to recover his car after the July 21, 1998 seizure towards the judgment amount that formed the basis for the defendants' October 21, 1998 seizure. *See* Gruen Affirmation I. at ¶¶ 54–55, 71–72.

Amendment right against unreasonable searches and seizures [6] and his Fourteenth Amendment due process rights.

Defendants respond that the Seizure Process does not violate plaintiff's rights under either the Fourth or Fourteenth Amendments. Specifically, defendants assert that the challenged procedures comport with the applicable New York State laws and are constitutionally reasonable under the Fourth Amendment. Defendants further argue that plaintiff has failed to present competent evidence to support his contention that the outstanding judgments against him totaled less than the "tow eligible" amount on either of the dates his car was seized. Moreover, defendants contend that even if they had committed errors while implementing the Seizure Process, plaintiff has failed to establish a deprivation of property without due process. Finally, regarding plaintiff's claims against individual City employees and defendant Airday, defendants assert that plaintiff has not demonstrated—as he must—that any of these individuals: (1) were personally involved in authorizing the unconstitutional seizure of plaintiff's car; (2) violated clearly established constitutional rights; or (3) violated clearly established constitutional rights while acting in an objectively unreasonable way with respect to their knowledge that such actions were unconstitutional.

## II. DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### A.  Plaintiff's Fourth Amendment Claim

█ Plaintiff relies primarily on his rights under the Fourth Amendment in support of his complaint. The Court will therefore address plaintiff's Fourth Amendment arguments first. What plaintiff claims, in essence, is that defendants acted in derogation of his rights by seizing his car without a valid warrant. In making this accusation, plaintiff argues initially that a warrant was absolutely necessary to seize his car. Accepting this premise as correct, he then argues that the Seizure Process is unconstitutional under the Fourth Amendment by challenging, *inter alia:* (1) the form of the PVB executions defendants use to identify cars for seizure;

---

**6.** In support of his Fourth Amendment claim, plaintiff identifies a number of discrete aspects of defendants' Seizure Process that he believes are unconstitutional. Plaintiff includes on this list of constitutional infirmities: (1) the lack of a "particular description" of the vehicle to be seized on the execution form used by the PVB; (2) the absence of a warrant that conforms with Fourth Amendment requirements because of the invalidity of the execution form under New York law; (3) the use of a system for entering parking violations judgments that violates New York law; and (4) the use of attorneys to issue the PVB executions who are not authorized to so act under Section 1501 of the New York Civil Court Act. *See, e.g.,* Plaintiff's Memo. I. at 2–13.

(2) the lack of procedural safeguards in the Seizure Process; and (3) defendants' non-compliance with New York law.[7] According to plaintiff, the defects he identifies in the Seizure Process—individually and combined—make it unconstitutional. In short, plaintiff believes that defendants' actions against him and his car constituted unreasonable seizures. The Court disagrees.

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to the states—and to municipalities and municipal subdivisions acting under color of state law—through the Fourteenth Amendment. *See, e.g., Soldal v. Cook County, Illinois,* 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Moreover, the Fourth Amendment's protections extend to both civil and criminal proceedings. *See id.* at 67–68, 113 S.Ct. 538. Additionally, a property seizure (the type of action challenged by plaintiff) "occurs when there is some meaningful interference with an individual's possessory interests in [his] property." *Id.* at 61, 113 S.Ct. 538 (internal quotations omitted). In the instant case, it is undisputed that seizures occurred when defendants twice towed plaintiff's car. The parties disagree, however, regarding whether such seizures were reasonable under the Fourth Amendment.

As the *Soldal* Court emphasized, "reasonableness is still the ultimate standard under the Fourth Amendment." *Id.* at 71, 113 S.Ct. 538. For the following reasons, the Court finds that, as a matter of law, defendants' seizures of plaintiff's car were reasonable and that no warrant was required before defendant Airday twice removed plaintiff's vehicle from the City's streets. In *Florida v. White,* 526 U.S. 559, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999), the

Supreme Court addressed a challenge to a warrantless seizure of a car by Florida police. The police had seized the car, pursuant to a Florida contraband statute, while it was parked in respondent's employer's parking lot. *See White,* 526 U.S. at 566, 119 S.Ct. 1555. In the course of reversing the Florida Supreme Court and finding the seizure constitutional, Justice Thomas addressed issues of original intent under the Fourth Amendment and discussed the existing, relevant Supreme Court search and seizure jurisprudence. His majority opinion noted the long-standing "special considerations [under the Fourth Amendment] in the context of movable items" such as cars, and then went on to declare:

> In addition to [the aforementioned special considerations] our Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public places.... [W]e have drawn upon the established distinction between a warrantless seizure in an open area and such a seizure on private premises.

*White,* 526 U.S. at 565–66, 119 S.Ct. 1555 (citation and internal quotations omitted). The Court then addressed another seminal case in this area, *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), noting:

> There we considered whether federal agents violated the Fourth Amendment by failing to secure a warrant prior to seizing automobiles in partial satisfaction of income tax assessments. We concluded that they did not, reasoning that "[t]he seizures of the automobiles in this case took place on public streets,

---

7. As the Court indicated on the record at oral argument and as noted *infra* at note 16 and Part II.B.2., the Court will not address plaintiff's contentions regarding whether defen-

dants did or did not comply with New York State or New York City law. In short, the Court will address only plaintiff's claims under the United States Constitution.

parking lots, or other open places, and did not involve any invasion of privacy." *White*, 526 U.S. at 566, 119 S.Ct. 1555 (citation omitted) (alteration in original).

From these precedents, the *White* Court concluded there was no invasion of privacy because the Florida police seized the car at issue from a public place; the Court therefore found that, in accordance with its existing jurisprudence and relevant constitutional principles, there was no Fourth Amendment violation. *See id.* The principles reaffirmed in *White* apply with equal force to the situation currently before this Court. *Cf. Soldal*, 506 U.S. at 71, 113 S.Ct. 538 (observing, hypothetically, that if officers had made a warrantless seizure pursuant to a court order, "a showing of unreasonableness ... would be a laborious task indeed"); *see also G.M. Leasing*, 429 U.S. at 352 n. 18, 97 S.Ct. 619 (noting that a warrant is not necessary to seize a street-parked car in satisfaction of a United States tax lien, not only due to the lack of a privacy invasion, but also because "a tax assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt" (internal quotations omitted)).[8]

Moreover, contrary to plaintiff's argument, these principles apply outside both the federal income tax and Florida contraband seizure contexts. In *Schneider v. County of San Diego*, the United States Court of Appeals for the Ninth Circuit ("the Ninth Circuit") upheld the warrantless seizure by the County of San Diego of a number of vehicles parked in an open field—and in plain view of a local highway—on appellant's property. *See* 28 F.3d 89, 90–92 (9th Cir.1994). Defendants determined that the vehicles were parked in violation of relevant zoning laws and subsequently entered an abatement order demanding their removal. *See id.* at 90–91. Following a hearing denying plaintiff's challenge to the abatement order,[9] defendants seized the vehicles—without a warrant—due to plaintiff's continuing failure to abide by the disputed order. *See id.* at 91. The Ninth Circuit found that the County had acted within the limits of the Constitution by seizing without a warrant, noting:

> Unlike the seizures in *G.M. Leasing*, the seizures [in *Schneider* ] were not "in satisfaction of a claim of the United States." But they were authorized pursuant to the police power of the State of California. Because the warrantless seizures ... did not impinge on any legitimate privacy interest, the abatement hearing was sufficient to establish the validity and reasonableness of the seizure. No warrant was required.

*Schneider*, 28 F.3d at 92 (citations omitted); *see also United States v. Pappas*, 600 F.2d 300, 304 (1st Cir.1979) (stating that "*G.M. Leasing* ... is not so out of line with the automobile exception as now conceived to suggest it be limited to its facts or tax levy context"). This Court finds

---

**8.** The *G.M. Leasing* Court also emphasized that "[t]he rationale underlying these decisions, of course, is that the very existence of government depends upon the prompt collection of the revenues." 429 U.S. at 352 n. 18, 97 S.Ct. 619. The same principle applies in the instant case since the City's existence also depends—at least in small part—on the prompt collection of parking violations revenues.

**9.** As discussed more fully below, plaintiff had numerous opportunities to challenge the tickets and default judgments entered against him either by appearing at an administrative hearing or by prosecuting an Article 78 proceeding in the New York State courts. *See infra* Part II.B.2. Plaintiff took only limited advantage of these available procedures when he appeared by mail in administrative proceedings to contest a few of his parking tickets; plaintiff never challenged, however, any of the default judgments entered against him.

therefore that plaintiff's claim presents a situation analogous to those addressed by existing Fourth Amendment warrantless seizure jurisprudence. Specifically, the Court finds that a warrant was not needed to seize plaintiff's car because defendants: (1) impinged on no privacy interest when they removed plaintiff's car from the City's streets; and (2) acted pursuant to PVB default judgments entered pursuant to a neutral[10] administrative process established under the legislative authority of the State of New York—which process also provided extensive notice to plaintiff regarding his right to contest both the parking tickets and default judgments entered against him.[11] *See also Payton v. New York,* 445 U.S. 573, 586–87, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (emphasizing that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."); *accord Texas v. Brown,* 460

U.S. 730, 738, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

■ Even assuming, *arguendo,* that there was such a warrant requirement on · the facts presented in this case, the Court disagrees with plaintiff's suggestion that the execution forms used by defendants did not constitute proper warrants. According to plaintiff, his "primary argument" in opposition to defendants' motion—and in support of his own motion—is that these execution forms are constitutionally infirm. *See* Transcript of June 11, 2001 Oral Argument at 25. The Court finds this argument unpersuasive.

It is undisputed that the Fourth Amendment demands that warrants "particularly describ[e] ... the persons or things to be seized."[12] U.S. Const. amend. IV; *accord United States v. Bianco,* 998 F.2d 1112, 1115 (2d Cir.1993); *People v. Bennett,* 171 Misc.2d 264, 653 N.Y.S.2d 835, 837 (Sup.Ct., Bronx County.1996). This command derives from the founders wish to prohibit the government from conducting "general searches." *See, e.g.,*

10. To the extent discernable from the record, plaintiff does not allege that any of the defendants demonstrated a particular bias against him when they prosecuted the various parking summonses relevant to this case. Moreover, to the extent plaintiff ascribes to defendants any insidious motivations, he does so merely through conclusory allegations that they were too concerned with expediency and money. *See, e.g.,* Complaint at ¶ 66; Plaintiff's Memo. I. at 1. Thus, the record is devoid of material facts suggesting that the Seizure Process lacked neutrality.

11. The opportunities to contest the relevant parking tickets, default judgments, and the seizures themselves are discussed in more detail below in connection with the Court's analysis of plaintiff's procedural due process claims. *See infra* Part II.B.2.

12. The Fourth Amendment also requires that warrants issue only upon probable cause. *See* U.S. Const. Amend. IV. Plaintiff does

not seem to seriously contend that defendants lacked probable cause to issue the executions used for the challenged seizures. However, to the extent that his prolix pleadings and motion papers do insinuate that defendants lacked probable cause to issue the relevant executions, the Court rejects such an insinuation. Accordingly, the Court finds that on the record presented, defendants had probable cause to issue and act upon the judgments and executions relevant to plaintiff's claims. *See Tenenbaum v. Williams,* 193 F.3d 581, 603 (2d Cir.1999) (stating that "[p]robable cause is a flexible term. There is no rigid demand that specific tests be satisfied. In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (citation and internal quotations omitted) (alteration in original)); *accord Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*United States v. Shi Yan Liu,* 239 F.3d 138, 140 (2d Cir.2000). *cert. denied sub. nom. Jie Hu v. United States,* —— U.S. ——, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001). These "so-called general searches ....— which have been variously described as 'wide-ranging exploratory searches,' and 'indiscriminate rummaging[s],'—are especially pernicious, and have long been deemed to violate fundamental rights." *Id.* (alteration in original) (citations omitted). Although the Fourth Amendment is designed to "prevent[ ] the seizure of one thing under a warrant describing another [so that] nothing is left to the discretion of the officer executing the warrant," *see Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927), courts repeatedly underscore that, when considering a challenge to the particularity of a warrant they will

> tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expect-

ed to cover, and have insured that all those facts were included in the warrant. *United States v. Young,* 745 F.2d 733, 759 (2d Cir.1984) (collecting cases). Accordingly, and as the United States Court of Appeals for the Second Circuit ("the Second Circuit") recently emphasized, a government entity can avoid the egregious abuses envisioned by the drafters of the Fourth Amendment by issuing warrants that are " 'sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize.' " *Shi Yan Liu,* 239 F.3d at 140 (alteration in original) (quoting *United States v. LaChance,* 788 F.2d 856, 874 (2d Cir.1986)).

Additionally, ambiguities in the language of a warrant can be cured through the incorporation of a supporting affidavit that more specifically describes the search to be conducted or the item to be seized. *See, e.g., Bianco,* 998 F.2d at 1115–17; *United States v. Haydel,* 649 F.2d 1152, 1156–58 (5th Cir.1981).[13] Not surprisingly, therefore, courts stress that the Fourth

**13.** Plaintiff avers that a supporting affidavit can only be incorporated to cure an otherwise vague—and therefore allegedly defective—warrant when there is specific language of incorporation. Yet, as defendants note, the challenged executions themselves make multiple references indicating that the execution includes and applies to a list of judgment-debtors maintained on a computer database. Moreover, as a recent decision in this district noted while discussing the circumstances when a supporting affidavit can be deemed a part of a warrant for Fourth Amendment purposes:

> The incorporation and attachment requirements are not inflexible .... A warrant lacking in particularity can be saved if "the involved parties were aware of the scope of and limitations on the search," since in such circumstances "the functional purposes of those two requirements ... [are] fully satisfied."

*United States v. Rollack,* 90 F.Supp.2d 263 (S.D.N.Y.1999) (Cedarbaum, J.) (quoting

*Bianco,* 998 F.2d at 1116–17). It is worth emphasizing—as Judge Cedarbaum did in *Rollack*—that the Second Circuit upheld the search challenged in *Bianco* even though there was no express incorporation language in the challenged warrant. In reaching this decision, the *Bianco* panel found: (1) that reading the warrant and affidavit together cured any possible ambiguity; and (2) that the "presence at the search of the affidavit, agent Hutton's active supervision of the search, the specificity of the affidavit, and the fact that the agents did not exceed the scope of the warrant and affidavit when read together" made the search reasonable under the Fourth Amendment. 998 F.2d at 1117. This case implicates similar principles because, even though there is no sentence on the City's execution form that uses the words "incorporate by reference," the circumstances of its issuance and use serve the Fourth Amendment's basic purposes. *See infra* description of the challenged executions.

Amendment does not require: "hypertechnical accuracy and completeness of description ... but rather, from the standpoint of common sense [demands only] that the descriptions in the warrant and its supporting affidavits be sufficiently definite to enable the searcher to identify the ... things that the Magistrate has previously determined should be ... seized." *People v. Nieves,* 36 N.Y.2d 396, 369 N.Y.S.2d 50, 57, 330 N.E.2d 26 (1975); *accord Bennett,* 653 N.Y.S.2d at 837 ("warrants must be evaluated with common sense"); *see also, e.g., United States v. Johnson,* 541 F.2d 1311, 1314 (8th Cir. 1976) ("[T]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved."). Thus, the ultimate determination of "[w]hether a ... warrant is sufficiently particular 'necessarily depends upon the facts and circumstances of each case.'" *Bennett,* 653 N.Y.S.2d at 837 (quoting *Nieves,* 369 N.Y.S.2d at 58, 330 N.E.2d 26); *see also Ker v. California,* 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (stating that there "is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances [because] standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application" (internal citations and quotations omitted)).

But perhaps the most crucial thing to consider before resolving the particularity question is the "core purpose" of the Constitution's warrant requirement: the protection of "the right of privacy from arbitrary police intrusion,"[14] *Bennett,* 653

N.Y.S.2d at 837. Virtually all of the cases plaintiff relies on to support his claim involve challenges to search warrants issued in connection with a criminal investigation and with the purpose of allowing the police to discover whether there was evidence of criminal activity inside a person's home or automobile. *See, e.g., Marron,* 275 U.S. at 193–95, 48 S.Ct. 74; *Marks v. Clarke,* 102 F.3d 1012, 1030–31 (9th Cir.1996); *see also* Plaintiff's Memo. I. at 3–5. These cases often emphasize, therefore—and again, not surprisingly—that a criminal "defendant's Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy." *United States v. Haqq,* 278 F.3d 44, 47 (2d Cir.2002). Similarly, cases addressing the Fourth Amendment implications of government actions taken pursuant to administrative schemes focus on intrusions on "the sanctity of [a person's] home." *Camara v. Municipal Ct. City & County San Francisco,* 387 U.S. 523, 531, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *see also United States v. Reed,* 572 F.2d 412, 422–23 (2d Cir.1978) (discussing in the context of a challenge to a criminal search the acute constitutional concerns that arise when searches occur in a person's home); *United States v. Bin Laden,* 126 F.Supp.2d 264, 284–85 (S.D.N.Y.2000) (same). In this case, plaintiff's particularity challenge arises in a context that, at a minimum, does not implicate the core privacy concerns embodied in the warrant requirement.

Moreover, contrary to plaintiff's contention, the circumstances of his case compel a finding that the executions issued to and

---

**14.** The Supreme Court also stresses that, [e]xclusive reliance on the Fourth Amendment is appropriate in the arrest context ... because the Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the process that is due for seizures of person or property in criminal cases.
*United States v. James Daniel Good Real Property,* 510 U.S. 43, 50, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (internal quotations omitted).

used by defendant Airday were sufficiently particular to satisfy the warrant requirement—assuming *arguendo* that such requirement applies at all. Even if plaintiff is correct that defendants, and the City Defendants in particular, failed to comply with New York's civil practice rules or legislative schemes, such failures themselves do not *ipso facto* compel a finding that the challenged executions were unconstitutional under the Fourth Amendment, especially where, as here, the executions issued to defendant Airday were sufficiently particular in view of their reference to and dependence on the incorporation of judgment debtor information listed on a computer database maintained by the PVB ("the Computer Database" or "the Database").

Plaintiff mistakenly believes that the executions lack the requisite particularity simply because their reference to information on the parking violations database may not conform with the letter of the New York C.P.L.R. However, as the courts have repeatedly affirmed, procedures are a means and not an end in themselves. *See, e.g., Stone v. Powell,* 428 U.S. 465, 491 n. 30, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *People v. McGrath,* 46 N.Y.2d 12, 412 N.Y.S.2d 801, 804, 385 N.E.2d 541 (1978); *Lewis v. Miller,* 111 Misc.2d 700, 444 N.Y.S.2d 849, 851 (Rochester City Ct.1981). Here, the means chosen are not so defective as to render the statutory scheme constitutionally infirm.

The execution[15] form itself authorizes the City marshals to take specific action for a defined—and short—period of time. Specifically, a City attorney specially designated to enforce parking violations judgments ("the Special Counsel") signs—on behalf of the New York City Department of Finance (Parking Violations) before which the relevant administrative proceedings occurred and from whom the judgments issued—an execution that both references and is applicable to all parking violations judgments in effect for that week. The Special Counsel issues each execution pursuant to the authority granted to the "Civil Court of the City of New York, Office of the Special Clerk for Parking Violations" by New York State and New York City law.[16] *See* Roth Declaration I. at Exh. K., pp. 000251–52, 000255–56 (copies of executions in effect during the two (2) weeks in 1998 during which defendant Airday towed plaintiff's vehicle ("the 1998 Executions")). The caption in these executions lists the "City of New York Department of Finance (Parking Violations)" as the "Judgment–Creditor" and indicates that such judgment creditors are in an adversarial relationship with "Various Judgment–Debtors Listed in the Parking Violations Computer Database"; there is also a handwritten entry in the caption indicating the week during which the execution is in force. *See id.*

The executions also state, clearly and unequivocally, that they are "To Be Used For Street Vehicle Seizures." Moreover,

---

**15.** The City Defendants make much of the alleged difference between executions and warrants. While the Court is aware of the traditional distinction between the two—*i.e.,* executions, unlike warrants, are typically issued for post-judgment enforcement of money judgments—it assumes for the sake of argument that the execution challenged by plaintiff constitutes a warrant as that term is understood under the Fourth Amendment.

**16.** The parties devote a substantial portion of their efforts in this case to disputing both the actual authority of the Special Counsel and whether his appointment is consistent with New York State law. A resolution of this dispute is unnecessary to decide plaintiff's claims under the United States Constitution. Indeed, this issue, to the extent that it is relevant at all to plaintiff's case, is subsumed in the Court's resolution of his due process complaints. *See infra* Part II.B.

as the 1998 Executions used by defendant Airday demonstrate, the form also: (1) states that the City obtained the relevant judgments following administrative proceedings before the City's finance department in an action between that department and the judgment-debtors listed in that department's computer database; (2) indicates that New York VTL § 237(5) authorizes the enforcement of such judgment in the "same manner as the enforcement of money judgments entered in civil actions"; (3) explains that the judgment amounts "represent the total of penalties imposed for those violations set forth" on the Computer Database; and (4) "COMMAND[S] [the marshal] to satisfy the said judgments ... out of the personal property of the above-described judgment debtors."[17] *Id.*

The Court finds that the executions defendant Airday used were—and the forms in general are—constitutional both because they functionally incorporate by reference the information listed on the Computer Database and because the circumstances surrounding their use show that defendants avoided any violation of the Fourth Amendment's dictates. It is of course undisputed that all of the City marshals are incapable of seizing a vehicle without referring to the above-described computerized list of judgment-debtors. In practice, a marshal uses a portable computer in his car to remotely obtain information regarding whether a particular street-parked vehicle is "tow eligible." Defendant Airday did exactly that when he twice seized plaintiff's car. *See* Roth Declaration I. at ¶¶ 37–38. The marshal may only seize a car, therefore, if he discovers, as defendant Airday did in this case, that a vehicle is registered to a judgment-debtor listed on the Computer Database with more than $230 in outstanding judgments.[18] Thus, the execution form, with its multiple references to the judgment-debtors listed in the Computer Database, renders the seizure by the marshal virtually routine and ministerial. Moreover, the City marshals may conform a copy of the execution at the time of a seizure by handwriting specific information about the debtor's vehicle and the judgment amount owed below the signature line of the Special Counsel; defendant Airday completed such a conformed copy each time he seized plaintiff's car.[19] *See* Roth Declaration I. at Exh. M.

---

17. It is worth noting that, attached to the execution form, is a sheet notifying judgment-debtors that "property belonging to you may have been taken or held to satisfy a judgment which has been entered against you." *See* Roth Declaration I. at Exh. K., pp. 000252, 000256. This sheet also tells the judgment-debtor that both state and federal law limits the property that can be taken to satisfy judgments, provides a partial list of such items, and *inter alia*, informs them of their right to consult counsel, if they so choose. *See id.*

18. Plaintiff contends, and defendants dispute, that the Computer Database can sometimes be inaccurate regarding the enforceability of particular judgments. Assuming plaintiff is correct that these inaccuracies are possible, and further assuming that it was inaccurate with respect to him on the days in question, the Court finds that such errors fail to render the Seizure Process—or the 1998 executions in particular—constitutionally invalid under the Fourth Amendment. Such a challenge is more appropriately considered and disposed of in connection with plaintiff's due process claims. *See infra* Part II.B.

19. The parties make various points regarding the City marshals' practice of completing this conformed copy of an execution. The Court finds, however, that it is immaterial whether taking such action was voluntary. The existence of discretion by the marshal in this aspect of the seizures process has no constitutional significance to the validity of the seizure. In any event, the parties do not dispute that defendant Airday in fact did execute such a conformed copy when he twice seized plaintiff's car. *See* Roth Declaration I. at Exh. M.

To summarize the relevant facts, defendant Airday twice seized plaintiff's car: (1) after finding it on a public street; (2) after determining that it was "tow eligible" because the registered owner of the car—plaintiff—was a judgment-debtor with more than $230 in outstanding judgments listed on the Computer Database on that date;[20] and (3) having completed a conformed copy of the execution which combined the 1998 executions with the relevant Database information regarding the judgments pending against plaintiff. These facts and circumstances, taken together, demonstrate that the 1998 executions were "sufficiently definite to enable the searcher to identify the . . . things that the Magistrate has previously determined should be . . . seized." *Bennett,* 653 N.Y.S.2d at 837, (internal quotations omitted); *see also Bianco,* 998 F.2d at 1117 (noting the flexibility inherent in the incorporation by reference corollary to the warrant rule); *Rollack,* 90 F.Supp.2d at 263 (same); *supra* note 13.

In sum, there is no merit to plaintiff's argument that the methods the marshals use to seize vehicles in satisfaction of parking violations are equivalent to the "indiscriminate rummagings" prohibited by the Constitution or that the Seizure Process affords the City marshals, in particular, an impermissible amount of discretion because it allows them to take "raw data," like that contained on the Computer Database, "and translat[e] it into action." Plaintiff's Memo. I. at 7.[21] Indeed, to the extent the marshals have any discretion at all, it is significantly circumscribed by the tow eligibility limits and the elaborate administrative legal process that precedes both the entry of judgments and the seizure of vehicles. Put another way, defendants avoid the dangers envisioned by the drafters of the Constitution by taking as much discretion as possible away from the City marshals prior to issuing executions. These marshals do not, as plaintiff suggests, have the ability to pick and choose which cars to tow by assembling raw data. The evidence before the Court demonstrates what the Court has already described: the marshals simply check a car's license plate and determine whether—according to the PVB administrative officer with the legal authority to render judgments and enforce them as if entered by a civil court—the owner of that car is a judgment-debtor with more than $230 dollars in outstanding judgments. *See* Roth Declaration I. at ¶¶ 37–41; Gruen Affirmation I. at ¶ 53.

Finally, as a practical matter, if the Court accepted plaintiff's arguments re-

**20.** Plaintiff spends considerable time arguing that the weekly judgment list on which defendants rely is, for at least a few hours each Thursday, potentially inaccurate and could lead to the seizure of cars that are not "tow eligible." Even assuming plaintiff is correct in his characterization and that this potential discrepancy is material to his claims, the undisputed facts reveal that plaintiff lacks standing to assert such deficiency as a basis for obtaining relief because the two (2) 1998 seizures of his car occurred on a Tuesday and Wednesday. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment dated May 18, 2001 at 9; Plaintiff's Memo. I. at 6. In any event, the mere fact that an error was possible is not sufficient to establish a Fourth Amendment violation.

**21.** Plaintiff also makes much of the different—and often inaccurate—ways that his name is spelled on, *inter alia,* the computer systems of the PVB and the Division of Motor Vehicles ("DMV") and the judgments issued against him. *See, e.g.,* Plaintiff's Memo. I. at 5,7. Defendants attempt to attribute these discrepancies to mistakes made by plaintiff when he filled out forms at the DMV. *See, e.g.,* Declaration of Sherrill Kurland dated February 16, 2001 ("Kurland Declaration I") at Exh. D (City Defendant's Exhibit 50). However, after a thorough review of the record the Court finds that at most these were clerical errors that have no material effect on the instant case.

garding these forms, defendants would be left with at least two (2) equally unattractive and unnecessary ways to change their behavior: (1) they could either abandon the practice of sweeping the City streets in search of cars owned by people that have accumulated significant parking violations judgments; or (2) they could insist that each of the marshals make their daily rounds burdened with thousands of executions listing specific information about judgment-creditors whose vehicles may or may not ever be found that day. The Constitution does not compel such practices. In the final analysis, the Court finds that no rational juror could conclude that the form of execution defendants use lacks the particularity necessary to effectuate its purpose—*i.e.* the seizure of "street vehicles" owned by judgment-debtors like plaintiff, especially since plaintiff has presented no evidence from which a rational juror could conclude that the challenged seizures were unreasonable under the Fourth Amendment. *See Soldal,* 506 U.S. at 71, 113 S.Ct. 538; *accord Coleman v. Watt,* 40 F.3d 255, 263 (8th Cir.1994) (holding that plaintiff had not made the requisite showing that it was unreasonable for the government defendant to impound his car as a part of its moving violations enforcement program); *see also C.A.U.T.I.O.N., Ltd. v. City of New York,* No. 93 Civ. 4718, 1994 WL 455553, at *8 (S.D.N.Y.1994) (Wood, J.) (dismissing for lack of particularity in complaint—but granting plaintiffs opportunity to replead—a Fourth Amendment claim alleging defendant's improper seizure of commercial vehicles); *Grant v. City of Chicago,* 594 F.Supp. 1441, 1451 (N.D.Ill.1984) (finding reasonable under the Fourth Amendment the City of Chica-

go's practice of "booting" and thereby immobilizing vehicles whose owners had a large number of unpaid parking violations).

This conclusion is further supported by the fact that New York's vehicle and traffic laws and the parking violations system plaintiff challenges serve several important and quite legitimate government interests. Chief among those interests is securing compliance with and deterring violations of parking regulations. Subsumed in this interest is the government's concern for safety—an interest served, for instance, by ensuring that motorists do not park in front of fire hydrants. Also included in the compliance and deterrence interest is a desire to "alleviat[e] congestion in the traffic-clogged streets of the City." *C.A.U.T.I.O.N., Ltd. v. City of New York,* 898 F.Supp. 1065, 1067 (S.D.N.Y.1995) (Kaplan, J.). Another government interest at play in this case—although it is not one defendants emphasize—is the collection of revenues. The undisputed evidence before the Court shows that the City collects many millions of dollars from the towing program. *See, e.g.* Gruen Affirmation I. at Exh. LL (copy of the City's revenue report for the 1994 fiscal year which indicates that the towing program collected almost $60 million dollars that fiscal year). The government therefore has numerous interests at play, all of which are related to the reality that "[p]arking space on the [City] streets . . . is among the scarcest of commodities." *All Aire Conditioning, Inc. v. City of New York,* 979 F.Supp. 1010, 1012 (S.D.N.Y.1997) (Kaplan, J.).

In sum, even giving plaintiff the benefit of every rational inference in his favor, he has proven only that defendants temporarily [22] deprived him of his car because they may have made various inadvertent [23]

---

**22.** The evidence shows that following both seizures plaintiff was able to retrieve his car less than a month after it was seized. *See* Complaint at ¶¶ 33, 42–45.

**23.** It is also worth noting that plaintiff has failed to offer any evidence that would sup-

errors in calculating the amount of money he owed the City on the two (2) dates in question. However, the Court finds that the balance of interests tip decidedly in the government's favor and that plaintiff's Fourth Amendment claim must therefore be dismissed.

### B. Plaintiff's Due Process Claims

■ Plaintiff also asserts that defendants violated his substantive and procedural due process rights—although the exact parameters of this assertion are unclear from his pleadings and motion papers. But, whatever their exact nature, these causes of action, like plaintiff's Fourth Amendment claim, are "based on the Fourteenth Amendment, as implemented by section 1983, and require[ ] the existence of a federally protectible property right and the denial of such a right in the absence of either procedural or substantive due process." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999). The Court addresses each due process claim considering the relevant evidence in the light most favorable to plaintiff.

### 1. Substantive Due Process

The Court finds that the record is barren of any pertinent evidence to support a claim that defendants deprived plaintiff of his substantive rights of due process.[24] To prevail on this claim, plaintiff must demonstrate that defendants so grossly abused their authority that they deprived him of a constitutionally protected property interest. *See, e.g., Natale*, 170 F.3d at 262. Courts often note that such gross abuse occurs only where the government action challenged is so "outrageous" and "arbitrary" that it "shocks the conscience." *See, e.g., id.* (collecting Supreme Court cases, Second Circuit authority, and cases decided by other United States Circuit Courts of Appeals). As the *Natale* panel explained:

Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbi-

---

port a rational inference that defendants acted in bad faith when seizing his vehicle. To the extent plaintiff makes any assertions that defendants acted against him in bad faith, such assertions are wholly conclusory. The absence of bad faith is one important way courts often distinguish impermissible general searches from those deemed reasonable under the Fourth Amendment. *See, e.g., Shi Yan Liu*, 239 F.3d at 140–41, 141 n. 3. Thus the absence of demonstrable bad faith in defendants actions provides a further reason to deny plaintiff's Fourth Amendment claim.

**24.** As a threshold matter, defendants contend that plaintiff cannot maintain a substantive due process claim because a more specific provision of the Constitution—in this case the Fourth Amendment—applies to the wrong alleged. A review of relevant Supreme Court and Second Circuit decisions reveals that the accuracy of defendants' assertion is far from clear. *Compare, e.g., Good,* 510 U.S. at 49, 114 S.Ct. 492 (1993) ("reject[ing] the view

that the applicability of one constitutional amendment pre-empts the guarantees of another" and noting especially that there is no "support for the proposition that the Fourth Amendment is the beginning and end of the constitutional inquiry whenever a seizure occurs"), *with Albright v. Oliver,* 510 U.S. 266, 273–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality announcing that substantive due process was inappropriate avenue for petitioner to pursue § 1983 challenge to his state criminal prosecution and noting that a Fourth Amendment claim was more appropriate), *and C.A.U.T.I.O.N.,* 898 F.Supp. at 1073 (declaring, while deciding a motion to dismiss amended complaint, that "substantive due process cannot form the basis for an unreasonable seizure claim" where plaintiffs' challenged defendants' seizures of their cars from City streets). For the purposes of deciding the instant motion, the Court assumes it is permissible for plaintiff to proceed against defendants for a violation of the Due Process Clause.

trary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority. *Id.* at 263; *accord Leeandy Dev. Corp. v. Town of Woodbury*, 134 F.Supp.2d 537, 543 (S.D.N.Y.2001). Quite evidently, therefore, plaintiff must satisfy a high burden of proof before he can prevail on a claim that defendants deprived him of substantive due process rights.

While there is no dispute that plaintiff's property and liberty interests were implicated by the seizure of his car, plaintiff has failed to demonstrate that the defendants deprived him of these rights through actions that shock the conscience because of their arbitrariness or outrageousness. Indeed, plaintiff presents no evidence showing that defendants treated him differently than any other parking regulation violator. It is clear, therefore, that defendants did not " 'burden fundamental rights or single out suspect classifications' " when implementing the City's parking violations program. *See All Aire*, 979 F.Supp. at 1018 (quoting *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir.1997)). As Judge Kaplan aptly observed, "as long as the City officials responsible for the [parking violations] enforcement guidelines reasonably might have conceived that the policies would serve legitimate interests, those guidelines must be sustained." 979 F.Supp. at 1018. Since plaintiff has failed to produce evidence showing that the scheme challenged served no legitimate state interest, his substantive due process claim must be dismissed.

### 2. Procedural Due Process

Plaintiff makes two (2) distinct but related claims alleging a deprivation of his procedural rights of due process. First, as best the Court can discern from the relevant pleadings and motion papers, plaintiff makes a general claim attacking both the City's process for the entry of parking violations judgments and the subsequent implementation of the Seizure Process in the enforcement of those judgments. Second, plaintiff makes a discrete challenge to a PVB rule (hereinafter referred to as the "Seven Day Rule" or "the Rule") that allows defendants—after an administrative law judge ("ALJ") has already agreed to reduce a fine owed by a parking violator—to reinstate the full amount of that fine should the violator fail to pay the reduced amount within seven (7) days of the ALJ's decision.[25] The Court addresses each of these claims separately.

■ With respect to plaintiff's more general Due Process Clause claim, the Court finds that defendants provide parking violators—and in this case provided plaintiff—with more than sufficient process to satisfy the Constitution. The Court assumes, for the purposes of addressing this claim, that civil proceedings of the sort challenged here,[26] which in-

**25.** This claim, as explained above at note 4, was the impetus behind plaintiff's Third Amended Complaint but was not argued to the Court on June 11, 2001 in support of the parties' initial motion submissions; this specific cause of action was instead the subject of additional briefing completed in November, 2001.

**26.** It is undisputed, and of some constitutional significance, that the commission of a parking regulations infraction constitutes a civil violation; indeed, the State of New York decriminalized its parking violations regime for cities with over one-million residents over thirty (30) years ago in response to the overwhelming burden that had previously been placed on the criminal courts of these large municipalities. *See Keiley v. Hinkson*, No. 74 Civ. 5075, at 3 (S.D.N.Y. Apr. 3, 1975) (Conner, J.) (attached as Exh. A. to City Defendants' Memorandum of Law dated February 16, 2001). Pursuant to that change in the law, the City established an administrative

volve the actual payment of fines and the seizure of personal property, implicate the procedural aspects of the Fourteenth Amendment's Due Process Clause. *Cf. Good,* 510 U.S. at 51–52, 114 S.Ct. 492, 126 L.Ed.2d 490 (1994) (finding that *ex parte* government seizure in connection with civil forfeiture proceeding implicated the due process clauses in both the Fifth and Fourteenth Amendments); *see also C.A.U.T.I.O.N., Ltd.,* 898 F.Supp. at 1073–74 (Kaplan, J.) (denying motion to dismiss but finding that procedural due process challenge was colorable due to "contention that City tows vehicles for alleged parking violations when ... there is no basis for such charges"); *C.A.U.T.I.O.N., Ltd.,* 1994 WL 455553, at *4–7 (Wood, J.) (allowing procedural due process claim to proceed and emphasizing that challenges to "civil seizures in support of debt are generally analyzed under the due process clause, rather than the Fourth Amendment"); *Blum v. Koch,* 716 F.Supp. 754, 757–64 (S.D.N.Y.1989) (Cedarbaum, J.) (analyzing procedural due process challenge of out-of-state resident to City's parking violations process); *DeYoung v. City of New York,* 607 F.Supp. 1040, 1042–46 (S.D.N.Y. 1985) (Conner, J.) (granting summary judgment to City on procedural due process challenge to its parking violations seizure system). However, to avoid summary judgment on this claim, plaintiff must demonstrate that a rational juror could infer from the evidence presented that defendants violated his procedural rights of due process. The record before the Court contains no such evidence.[27]

It is well-settled that "due process ... require[s] notice and an opportunity to be heard prior to the deprivation of a property interest, in the absence of an extraordinary situation [ ] that justifies postponing notice and opportunity for hearing." *United States v. Premises & Real Prop. at 4492 South Livonia Rd., Livonia, N.Y.,* 889 F.2d 1258, 1263 (2d Cir.1989) (internal quotations and citations omitted) (alteration in original). The Court assumes for the sake of disposing of this claim that such extraordinary circumstances do not exist in the instant case. Hence the question remains whether the procedures plaintiff challenges—namely, defendants' process for entering and enforcing parking violations judgments—afford him adequate notice and an opportunity to be heard.

Relevant Supreme Court and Second Circuit precedents establish that the availability of adequate pre-deprivation and post-deprivation remedies under state law will defeat a § 1983 action brought against state actors, *see, e.g., Zinermon v. Burch,* 494 U.S. 113, 127–28, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 299, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Gudema v. Nassau County,* 163 F.3d 717, 724 (2d Cir.1998)—so long as the claimant had sufficient notice of such remedies, *see Dusenbery v. United States,* 534 U.S. 161, 122 S.Ct. 694, 699–700, 151 L.Ed.2d 597 (2002), *i.e.* such notice as is reasonably calculated to apprise a person of an action against him. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 319, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Weigner v. City of New York,*

---

law system for the issuance and adjudication of parking violations that persists to this day—albeit in a somewhat modified form from that first created.

**27.** In his moving papers plaintiff omits "a detailed discussion of due process" because his arguments would "largely parallel those

under the Fourth Amendment." Plaintiff's Memo. I. at 13. To the extent plaintiff's procedural due process claims duplicate his arguments under the Fourth Amendment, they are rejected as due process claims for essentially the reasons set forth above with respect to his Fourth Amendment allegations.

852 F.2d 646, 649 (2d Cir.1988). There is no material factual dispute that the City's administrative parking violations system, together with the judicial system of the State of New York, provided plaintiff with adequate pre-deprivation remedies, adequate post-deprivation remedies, and sufficient notice that such remedies were available.[28]

The record of the instant case compels this conclusion. For instance, it is uncontested that plaintiff had the ability under the City's administrative adjudication system—which he exercised on a limited basis—to contest the tickets both before and long after initial payment on them was due. *See, e.g.* Gruen Affirmation I. at ¶¶ 57, 74–75 (indicating that plaintiff made in-person challenges to various judgments and tickets issued against him following each of the 1998 seizures of his car); Declaration of Alan Roth dated July 30, 2001 ("Roth Declaration II.") at ¶¶ 18–21 (describing plaintiff's April 1998 hearing-by-mail challenges to certain tickets relevant to this action). Plaintiff could choose to contest his tickets through the mail, via the internet, or in person. *See, e.g.,* Roth Declaration I. at Exhs. B (copies of parking tickets issued against plaintiff with explanation of ways to contest tickets), C (copy of Notice of Outstanding Summons sent to plaintiff that references, *inter alia,* availability of hearing to defend ticket); D (copy of Notice of Impending Default Judgment informing of same rights to defend against tickets indicated on Notice of Outstanding Summons). The City even allowed plaintiff to make an in-person challenge without an appointment by simply traveling to a PVB facility where plaintiff would receive a hearing that very day.

*See, e.g., id.* at Exh. B; *accord DeYoung,* 607 F.Supp. at 1044–45. Prior to the seizures of his car, plaintiff also had the ability to appeal any administrative determination—whether it concerned a contested ticket or a default judgment—first to an administrative appeals board and then, if he was unsatisfied with the results of such appeal, he could then prosecute an Article 78 proceeding in an appropriate New York State court. Indeed, an Article 78 action in many instances in itself constitutes sufficient procedural due process under the Constitution, *see, e.g., Locurto v. Safir,* 264 F.3d 154, 174–75 (2d Cir.2001); *C.A.U.T.I.O.N. Ltd.,* 898 F.Supp. at 1074–75, unless the factual situation is one in which procedural due process requires a pre-deprivation remedy. *See, e.g., Hellenic Am. Neighborhood Action Cmt. v. City of New York,* 101 F.3d 877, 880 (2d Cir. 1996).

However, plaintiff does not even allege that the existing parking violations regime fails to provide adequate pre or post-deprivation remedies. Indeed, he could not colorably do so since plaintiff had the ability—and on a few occasions did—challenge the tickets entered against him before defendants seized his car. Concededly, he also could have instituted a pre-seizure Article 78 challenge to the relevant tickets and/or judgments. Having failed to do so plaintiff cannot now demonstrate that he was deprived of procedural due process.

■ The evidence also shows that defendants sent, via mail, multiple notices to plaintiff informing him: (1) that parking tickets issued to him were past due; (2) that default judgments were impending against him; and (3) that default judg-

---

**28.** Plaintiff does not make allegations that the City's parking violations system, in general, provides insufficient pre and post-deprivation remedies. Plaintiff charges instead that defendants should provide more process under their Seven Day Rule—a claim the Court dis-

poses of *infra* at note 33. Moreover, to the extent that plaintiff makes any allegations challenging the sufficiency of the notice defendants provide, the Court finds, for the reasons explained more fully *infra,* that such dispute is not material.

ments had been entered against him. *See* Roth Declaration I. Exhs. B, C, D, H; Kurland Declaration I, Exh. A, Deposition of Luther Rackley ("Rackley Depo.") at 103–19 (plaintiff admitting that he had received, but subsequently disposed of, various documents related to his parking violations);[29] Defendants Memo. I. at 4–5, 17–18. After reviewing these notices, the Court concludes that each of them adequately informed plaintiff of the various remedies available to him for contesting tickets and default judgments. In short, each and every notice sent to plaintiff—including the tickets themselves, the notices of outstanding summons, the notices of impending default judgment, and the final notices indicating that the City had already imposed a default judgment—adequately notified plaintiff that he had multiple avenues to dispute defendants' actions taken against him. *See* Roth Declaration I. at Exhs. B, C, D, H. Moreover, plaintiff used both the hearing-by-mail and in-person dispute mechanisms and was thus clearly aware of the available remedies.[30]

29. Defendants use these passages from plaintiff's deposition testimony as a basis for requesting the imposition of sanctions against him. Specifically, they characterize this testimony as evidence that plaintiff intentionally destroyed various crucial pieces of documentary evidence. They contend that such action mandates that the Court at least draw various adverse interests against plaintiff. However, the Court does not believe that it is necessary to impose such sanctions to dispose of the instant motion. For instance, even if defendants are right that the absence of the destroyed documents prevents them from showing that plaintiff in fact never paid the parking tickets he claims to have paid, the Court has already indicated that a definitive resolution of that issue is unnecessary to resolve plaintiff's claims under the Constitution. In other words, assuming plaintiff is right that he paid some—or even all—of the tickets upon which defendants based their seizures, he still has not shown that such errors amounted to a violation of his rights under the Fourth and Fourteenth Amendments. Moreover, nowhere in his complaint or motion papers does plaintiff allege that he was unaware of the appeals/dispute avenues available to him within the City's administrative scheme and the New York State court system. To the extent plaintiff makes such an argument, the Court rejects it for the reasons already stated: plaintiff demonstrated his knowledge of his options for appeal by using at least two (2) of the procedures available to him—the hearing-by-mail option and the in-person, unscheduled hearing option.

Yet assuming *arguendo* that the documents destroyed are necessary for a resolution of the instant motion, and in order to supplement the record for appellate review, the Court hereby draws adverse inferences against plaintiff because, for the following reasons, it deems his actions sanctionable. These sanctions are warranted for a number of reasons. First, plaintiff demonstrated gross negligence by destroying documents such as original parking summonses and receipts proving payment of tickets. Moreover, plaintiff testified that he knew these documents were highly relevant to this lawsuit which, at the time of their destruction, had been pending for almost three (3) years. *See* Rackley Deposition at 104–19. Also, defendants attach to their motion papers persuasive substantiating evidence that plaintiff may have had and then destroyed such documents—or that documents he claims to have had were of the sort he claims to have destroyed. *See, e.g., id.;* Roth Declaration I. at Exh. B. Taken together, this evidence is sufficient for the Court to infer that the destroyed documents would have been unfavorable to plaintiff's claims and would have supported defendants allegations. *See, e.g., Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 107–08 (2d Cir. 2001). Thus, the Court finds that plaintiff's document shredding merits sanctions—even though such sanctions are unnecessary to resolve plaintiff's claims.

30. Plaintiff also claims that defendants violated his due process rights by delegating seizure responsibilities to the City marshals. Specifically, he charges that the marshals' "dependence on effecting seizures to secure compensation … burdens [them] with an unacceptable conflict of interest." Plaintiff's Memo. I. at 13. The Court disagrees. The cases plaintiff cites in support of this contention all involved successful challenges to

**484**

■ Finally, the Court rejects as a matter of law plaintiff's discrete Fourteenth Amendment claim challenging the above-described Seven Day Rule. Plaintiff emphasizes first that the City ordinance authorizing the Rule is inconsistent with several relevant New York State enabling statutes. He argues that this inconsistency voids the City ordinance. Whether this is true—and the Court will assume it is for the purposes of deciding the instant motion [31]—is not determinative of the federal constitutional claim plaintiff presents. In other words, plaintiff must establish that defendants invoked the Seven Day Rule against him in a way that deprived him of a property right recognized under the United States Constitution without providing sufficient procedural rights of due process.[32]

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest [does a court] look to see if the State's procedures comport with due process." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Defendants did not, however, deprive plaintiff of any such interest. Giving plaintiff the benefit of every rational inference in his favor, the Court finds that, at best, defendants conditioned plaintiff's entitlement to lesser fines upon their timely payment. Be-

"mayor's court" proceedings where a town mayor effectively acted as judge, jury and executioner with respect to traffic infractions. *See, e.g., generally Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Plaintiff's claim here challenges a system that is not even remotely analogous to the ones addressed in those cases. In fact, and as already explained, the Seizure Process places significant checks on the marshals' ability to abuse their power. Such restraints are more than sufficient to protect plaintiff and others in his position from potential abuses by marshals that possess some sort of crass financial incentive to effect seizures. Moreover, plaintiff presents no evidence showing, for example, that either defendant Airday or other marshals selectively choose which cars to seize based on differences in the potential payment they might receive at auction or once judgments are satisfied. Indeed, plaintiff's various insinuations that financial incentives and expediency drive the allegedly unconstitutional practices of defendants, *see, e.g.*, Complaint at ¶ 66, amount to no more than conclusory allegations. The Court therefore rejects plaintiff's argument that the marshals are burdened with an unacceptable conflict of interest.

**31.** Moreover, the existence of pre and post-deprivation remedies is in itself sufficient to dispose of these arguments.

**32.** Plaintiff contends that the City's "fine reduction forfeiture" practice deprives him of substantive as well as procedural rights of due process. Yet the record of this case provides no support for a substantive due process claim. In short, plaintiff fails to show that the reinstatement of the full amounts of fines after the lapse of one (1) week is such an arbitrary and outrageous practice that it shocks the conscience. Rather, the tendencies of parking regulations violators like plaintiff appear to necessitate such a practice. Such a conclusion flows from the evidence of this case showing, for instance, that plaintiff obtained fine reductions for several tickets in April 1998 and then failed to pay any money in satisfaction of those fines—whether in the reduced amount or not—until after defendants seized his car late in July, 1998. *See* Affirmation of Michael S. Gruen dated August 15, 2001 ("Gruen Affirmation II.") at ¶¶ 6, 9–10, 27; Gruen Affirmation I. at ¶ 64. The Court finds therefore that defendants had, at the very least, a reasonable belief that this "polic[y] would serve legitimate interests." *All Aire*, 979 F.Supp. at 1018. Thus, the challenged practice "must be sustained." *See id.* Accordingly, plaintiff's substantive due process challenge to the City's Seven Day Rule is dismissed.

cause plaintiff failed to satisfy such a condition, he never had the protected rights he claims defendants violated. *Cf. id.* at 60–61, 119 S.Ct. 977 (finding that plaintiff had no property right in medical benefits until he proved employer liability and the reasonableness of treatment sought); *see also Texaco v. Short,* 454 U.S. 516, 526, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) ("[T]he State has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest.").

■ What plaintiff claims were "fully adjudicated rights," *see* Plaintiffs Memorandum of Law on Third Amended Complaint dated August 15, 2001 ("Plaintiff's Memo. II.") at 5, were instead determinations by an ALJ that plaintiff was guilty of certain parking violations but could satisfy his liabilities for such infractions by paying—within seven (7) days of such determination—less than the full amount of the fine then pending. Moreover, unlike many of the litigants in the cases he cites, plaintiff was not the beneficiary of a finding that his adversary was somehow liable to him or that he lacked liability altogether. *See, e.g., generally Gilman v. Tucker,* 128 N.Y. 190, 28 N.E. 1040 (1891). In sum, the ALJ acted as a criminal court judge

might in reducing the monetary penalty for a crime. The Court cannot accept that in so doing defendants granted plaintiff a vested property right to the reduced fine—whether or not he complied with the conditions required for its implementation. It follows that plaintiff's procedural due process challenge to the Seven Day Rule must be dismissed.[33]

## C. Plaintiff's Claims Against Individual City Defendants and Defendant Airday

Plaintiff argues that various individual City officials and defendant Airday knowingly or recklessly violated his constitutional rights. As an initial matter, because the Court finds insufficient all of plaintiff's claims under the Constitution, none of the defendants are liable to plaintiff. But, again, assuming *arguendo* that plaintiff's constitutional claims are valid, the Court will address plaintiff's allegations against these individuals.

As already noted, City Defendants argue that plaintiff fails to meet the legal standard for overcoming the qualified immunity normally afforded to individual government employees acting in their official capacity. Defendant Airday contends separately that his status as a City marshal presents unique issues mandating a

**33.** The Court also finds untenable plaintiff's suggestion that defendants violated his due process rights by failing to afford him a hearing prior to reinstating the full amount of the fine. *See* Plaintiff's Memo. II. at 6. Plaintiff had ample pre-deprivation and post-deprivation remedies available to him—as already explained above at length. The Court is unwilling to accept the notion that the Constitution required defendants to provide plaintiff with a hearing every time he failed to pay the reduced fines obtained. Plaintiff's claim presents the classic instance where additional pre-deprivation safeguards are impracticable and constitutionally unnecessary. *See generally Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) Moreover, after

the Seven Day Rule caused the reinstatement of the full fines against him, plaintiff still had as many as twenty-three (23) days remaining in his thirty (30) day appeal window to challenge, before another administrative panel, either the reinstatement of the full fine or the initial finding that he was guilty of the underlying parking violation. An Article 78 proceeding was available should plaintiff have failed before such administrative appeals board. And, finally, defendants provided plaintiff with notice of both the Seven Day Rule and the available avenues for appeal by supplying him with documents reflecting that information. *See* Roth Declaration II. at Exhs. A, D; *supra* note 29.

denial of the claims brought against him. The Court finds, however, that all of the individual defendants—including defendant Airday—are not liable to plaintiff.

Plaintiff's claims must fail because he presents no evidence from which a rational juror could conclude that any of the individual defendants: (1) engaged in, authorized, condoned, or demonstrated deliberate indifference to unconstitutional actions against plaintiff; (2) acted in derogation of " 'clearly established statutory or constitutional rights of which a reasonable person would have known,' " *Poe v. Leonard*, 282 F.3d 123, 130 (2d Cir.2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); and (3) took actions in their official capacity that manifested an objectively unreasonable belief that such actions were constitutional. *See generally Wright v. Smith*, 21 F.3d 496 (2d Cir.1994); *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir.1989). All that plaintiff alleges is that each of the individual defendants should have known that prosecuting their daily job duties somehow violated or facilitated the violation of plaintiff's rights. *See, e.g.*, Plaintiff's Memo. I. at 14–27.

Specifically, plaintiff argues that none of the individual defendants could have reasonably believed "in light of clearly established law and the information [in their] posess[ion]" that their acts were constitutional. *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Yet the City's parking violations procedures have survived in the same basic form for over twenty-five (25) years.

In that time these procedures survived various challenges to their constitutionality. *See, e.g., generally Jaouad v. City of New York*, 39 F.Supp.2d 383 (S.D.N.Y. 1999) (Motley, J.); *All Aire Conditioning, Inc. v. City of New York*, 979 F.Supp. 1010 (S.D.N.Y.1997) (Kaplan, J.); *Blum v. Koch*, 716 F.Supp. 754 (S.D.N.Y.1989) (Cedarbaum, J.); *Keiley v. Hinkson*, No. 74 Civ. 5075, at 3 (S.D.N.Y.1975) (Conner, J.). Moreover, as set forth more fully *supra* at Part I.A., the Supreme Court, at least since *G.M. Leasing* in 1977, has clarified various points of constitutional law relevant to and supportive of the City's parking violations practices. This case authority not only supports the Court's dismissal of plaintiff's claims under the Constitution, but it also demonstrates that the individual defendants acted in an objectively reasonable way when they did their jobs each day. It follows that plaintiff's claims against the individual defendants—including those against defendant Airday [34]—are hereby dismissed.

### D. Plaintiff's State Law Claims

Having denied plaintiff's federal causes of action—*i.e.* his constitutional claims—the Court declines to exercise its discretion to consider plaintiff's state law claims. *See Carnegie–Mellon v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *accord In re Porges*, 44 F.3d 159, 162 (2d Cir.1995) (stating that Court is "not required to dismiss [plaintiff's] state claims [but] dismissal of such claims is the general rule"). The Court therefore dismisses these claims without prejudice to being renewed in an appropriate state court venue.[35]

---

34. As the Court noted at oral argument, City marshals such as defendant Airday cannot be held liable for implementing a constitutionally permissible parking violations regime. Accordingly, it is immaterial to the instant dispute whether the marshals act as independent contractors or agents of the City when seizing vehicles.

35. Defendants urge in their papers that the Court should invoke the so-called *Pullman* doctrine and thereby abstain from granting plaintiff any relief on his claims. The Court finds, however, that such invocation is unnecessary because no " 'difficult and unsettled question[ ] of state law must be resolved' " before the Court can decide plaintiff's federal

487

## CONCLUSION

For the foregoing reasons the Court grants defendants Motions for Summary Judgment, denies plaintiff's Cross–Motions for Summary Judgment, and dismisses plaintiff's Third Amended Complaint. The Clerk of the Court is directed to close the above-captioned action.

It is **SO ORDERED**

claims. *Blum,* 716 F.Supp. at 766 (quoting *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)). In other words, as alluded to *supra* at Part II.B.2. and notes 7, 16, the constitutionality of the portions of the City's parking violations regime that plaintiff challenges does not—despite plaintiff's entreaties to the contrary—depend on whether such processes comport with New York State law. The Seizure Pro-cess and the other procedures plaintiff challenges could indeed be void under New York law and still pass muster under the Constitution. Alternatively, these processes could also be consistent with New York law and—theoretically—also violative of the Constitution. Hence the Court declines to abstain from deciding plaintiff's federal claims under the *Pullman* doctrine.